[L. A. No. 29549. In Bank. Oct. 1, 1968.]

CAROL J. KUGLER et al., Plaintiffs and Respondents, v. NORMA YOCUM et al., Defendants and Appellants.

Don D. Bercu, City Attorney, for Defendants and Appellants.

Weinstein, Shelley & Proctor, Weinstein & Shelley and Robert C. Proctor, Jr., for Plaintiffs and Respondents.

Charles P. Scully as Amicus Curiae on behalf of Plaintiffs and Respondents.

TOBRINER, J.—We hold here that an ordinance which decrees that the salaries of certain city employees shall be no less than the average of those of an adjoining city and those of an adjoining county does not unlawfully delegate legislative power because the power to legislate has been expressed and exerted in the enactment of the policy of such parity; future adjustment in salaries pursuant to that formula is no more than the automatic execution of that policy; that process is protected from any abusive or arbitrary consequences by its own inherent safeguards.

Plaintiffs, residents of the City of Alhambra, bring mandate to compel defendants, as members of the city council of that city, either to adopt a proposed initiative ordinance or to call a special citywide election to vote upon it. Although plaintiffs had obtained the required number of signatures to secure the election, the city council refused to hold it; the council likewise rejected the proposed ordinance.

The proposed ordinance reads, in relevant part, as follows: "Except as otherwise provided for herein the monthly salaries of the members of the Fire Department in each classification shall not be less than an amount computed as follows: Beginning January 1, 1965, and the first day of each succeeding year thereafter, the City Manager of the City of Alhambra shall determine the then existing monthly salaries of each classification of like or comparable grades or ranks of the Fire Departments of the City of Los Angeles and the County of Los Angeles. The average of the salaries for the comparable grades or ranks of the members of the Fire Departments of the City of Los Angeles and the County of Los Angeles shall be the minimum salaries payable by the City of Alhambra to the members of its Fire Department of the same or compara-

ble grades or ranks." Thus the proposed ordinance provides that in setting the salaries of the firemen, the council could not fix them at an amount less than the average of the salaries received by the firemen of the City of Los Angeles and the salaries received by the firemen of the County of Los Angeles. - After the council's refusal to submit the ordinance to the electorate plaintiffs brought this action in the Superior Court of Los Angeles County to compel defendants to do so. That court found that plaintiffs had followed the proper procedure,[1] that the proposed ordinance was a proper subject for the exercise of the initiative power of the Alhambra electors, and that, if enacted, the ordinance would not improperly delegate the council's legislative power. Accordingly, the court issued a peremptory writ of mandate compelling the defendants to call a special election for consideration of the ordinance. Defendants have appealed from this judgment.

. ■ The trial court correctly concluded that the subject matter of the proposed ordinance, that is the salaries of city firemen, falls within the electorate's initiative power. The city charter provides that the "Council . . . shall have the power to . . . establish . . . the amount of [the fire division's] . . . salaries" (§ 81) and that the "electors . . . shall have the right to . . . adopt . . . any ordinance which the council might enact" (§ 176). Since in dealing with wage rates, the city council acts in its "legislative" rather than its "administrative" capacity (*Spencer* v. *City of Alhambra* (1941) 44 Cal.App.2d 75, 77 [111 P.2d 910]; *Collins* v. *City & County of San Francisco* (1952) 112 Cal.App.2d 719, 730 [247 P.2d 362]; *City & County of San Francisco* v. *Boyd* (1943) 22 Cal.2d 685 [140 P.2d 666]), wage rates are a proper subject for adoption as an ordinance by a city council and, accordingly, pursuant to section 176, for enactment by an initiative.

[1]The portions of the charter relevant to the procedure provide as follows: Section 81: "The council, subject to the provisions of this Charter, shall have power to organize the fire division and . . . establish the number of its members and the amount of their salaries . . . ." Section 176: "The electors of the city shall have the right to propose, by petition, and to adopt at the polls, any ordinance which the council might enact." Section 179: "Upon presentation to the council of such petition, . . . it must either adopt and enact such measure without alteration, or submit the same to the electorate at the next city election occurring subsequent to sixty days after the filing of said petition. But if said petition requests the calling of a special election and is signed and verified as herein provided and by electors in number equal to twenty-five per cent of said vote, then such ordinance, if not so adopted and enacted by the council, must be submitted to the electorate at a special election to be called within sixty days from the presentation of such petition."

■ [See fn. 2] Defendant's main contention rests upon the proposition that the enactment of the ordinance by either the council or the electorate would constitute an unlawful delegation of legislative power.[2] They point out that no representative of Alhambra can either predict or control the exact wage rates that will be established in the City or the County of Los Angeles. Accordingly, they argue, the proposed ordinance, in fixing the Los Angeles rates as the minimum for Alhambra firemen's salaries, would unlawfully delegate legislative power to those parties who establish salaries for Los Angeles firemen.

■ At the outset, we note that the doctrine prohibiting delegation of legislative power, although much criticized as applied (see, e.g., Witkin, Summary of Cal. Law (7th ed. 1960) p. 1834; 1 Davis, Administrative Law Treatise (1958) § 2.01), is well established in California. "The power . . . to change a law of the state is necessarily legislative in character, and is vested exclusively in the legislature and cannot be delegated by it . . . ." (*Dougherty* v. *Austin* (1892) 94 Cal. 601, 606-607 [28 P. 834, 29 P. 1092, 16 L.R.A. 161]; see also *People* v. *Johnson* (1892) 95 Cal. 471, 475 [31 P. 611]; *People* v. *Wheeler* (1902) 136 Cal. 652, 655 [69 P. 435]; *Coulter* v. *Pool* (1921) 187 Cal. 181, 190 [201 P. 120]; *Duskin* v. *State Board of Dry Cleaners* (1962) 58 Cal.2d 155, 161-162 [23 Cal.Rptr. 404, 373 P.2d 468].) Moreover, the same doctrine precludes delegation of the legislative powers of a city (*City of Redwood City* v. *Moore* (1965) 231 Cal.App.2d 563, 576 [42 Cal. Rptr. 72], and cases cited therein; see generally 2 McQuillin, The Law of Municipal Corporations (3d ed. 1966) § 10.39, p. 843, and cases cited at fn. 63).

Several equally well established principles, however, serve to limit the scope of the doctrine proscribing delegations of legislative power. For example, legislative power may proper-

[2]Defendants urge a somewhat indirect argument against the validity of the proposed ordinance based upon an attempted distinction between the powers of the city council and those of the electorate. They assert that if the voters approved the ordinance, the city council, under the Alhambra Charter, would never be able to repeal it; only the electorate can repeal an ordinance enacted by initiative. The unavailability of a specific method of repeal of an ordinance, however, does not affect the type or scope of an ordinance that the electorate in the first instance can enact. Section 176 of the city charter governs the latter question. If the policy underlying the rule that the city council cannot undo what the electorate has voted to do by initiative is deemed unwise, the remedy lies in either a frontal attack on that rule or a formal amendment of section 176 to narrow the electorate's initiative power. Accordingly, we reject defendants' indirect attempt to subvert section 176.

ly be delegated if channeled by a sufficient standard. "It is well settled that the legislature may commit to an administrative officer the power to determine whether the facts of a particular case bring it within a rule or standard previously established by the legislature . . . ." (*Dominguez Land Corp.* v. *Daugherty* (1925) 196 Cal. 468, 484 [238 P. 703]; see also *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.* (1953) 40 Cal.2d 436, 448 [254 P.2d 29]; Case Note (1959) 6 U.C.L.A.L.Rev. 312 and cases cited therein.)

A related doctrine holds: "The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others. The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect . . . ." (*First Industrial Loan Co.* v. *Daugherty* (1945) 26 Cal.2d 545, 549 [159 P.2d 921].) Similarly, the cases establish that "[w]hile the legislative body cannot delegate its power to make a law, it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." (*Wheeler* v. *Gregg* (1949) 90 Cal.App.2d 348, 363 [203 P.2d 37].)

We have said that the purpose of the doctrine that legislative power cannot be delegated is to assure that "truly fundamental issues [will] be resolved by the Legislature" and that a "grant of authority [is] . . . accompanied by safeguards adequate to prevent its abuse." (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 65 Cal.2d 349, 369 [55 Cal.Rptr. 23, 420 P.2d 735]; see also Jaffe, *An Essay on Delegation of Legislative Power* (1947) 47 Colum. L.Rev. 359, 561; 1 Davis, Administrative Law Treatise, supra, § 2.15; *Gaylord* v. *City of Pasadena* (1917) 175 Cal. 433, 437 [166 P. 348]; *Warren* v. *Marion County* (1960) 222 Ore. 307, 313-315 [353 P.2d 257]; *Lien* v. *City of Ketchikan* (Alaska 1963) 383 P.2d 721, 723-724; *Group Health Ins.* v. *Howell* (1963) 40 N.J. 436, 445, 447 [193 A.2d 103]; *Heath* v. *Mayor & City Council of Baltimore* (1946) 187 Md. 296, 303 [49 A.2d 799] (dictum).) ▮ This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to

establish an effective mechanism to assure the proper implementation of its policy decisions.

 In the instant case, the adoption of the proposed ordinance, either through promulgation by the Alhambra City Council or by initiative, will constitute the legislative body's resolution of the "fundamental issue." Once the legislative body has determined the issue of policy, i.e., that the Alhambra wages for firemen should be on a parity with Los Angeles, that body has resolved the "fundamental issue"; the subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation. Thus the decision on the legislative policy has not been delegated; the implementation of the policy by reference to Los Angeles salaries is not the delegation of it.

Whatever the motivation for the legislative policy, Alhambra will have rendered and pronounced it. The policy may be based upon the recognition that Alhambra could not recruit firemen at *lesser* rates than those paid in the adjoining County and City of Los Angeles. The policy may rest upon the fact that Los Angeles possesses a superior ability to canvass comparable wages for firemen and perform the research necessary to reach a fair salary decision. In any event, Alhambra will have reached the fundamental decision: the policy of parity with Los Angeles.

Alhambra's formula for salary adjustments based upon the Los Angeles rates does not differ from other formulae, recognized as lawful, that tie adjustments in compensation for employees into future events which do not lie within the power or control of the legislative body. The elemental illustration of such a formula is that which relates a wage adjustment to future dates or time periods for periodic adjustments. Moreover, adjustment may be linked to the cost of living, to average earnings or prevailing wages of a comparable occupation, to prevailing wages or average earnings generally, or to any number of such desiderata. The fact that the formula operates upon eventualities which may lie outside the control of the legislative body and within the control of other persons does not convert the legislative action into an unlawful delegation.[3]

In upholding the prevailing wage statutes this court has recognized that a statute, which set minimum wages for con-

[3]The proposed Alhambra ordinance provides merely for a finding of the average Los Angeles earnings before the Alhambra council fixes the salaries. The Alhambra council thereafter decides what the salaries will

tractors performing public work as those "prevailing" in the locality, did not "delegate" legislative power. In *Metropolitan Water Dist.* v. *Whitsett* (1932) 215 Cal. 400 [10 P.2d 751], this court rejected a variety of attacks on the statutory provision[4] that "Not less than the general prevailing rate of *per diem* wages for work of a similar character in the locality in which the work is performed . . . shall be paid all laborers, workmen and mechanics employed by or on behalf of the state of California." (P. 404.) Petitioner contended "(1) that said act is void for uncertainty . . . and (3) that the act makes an invalid delegation of legislative power." (P. 406.) The court points out that "The petitioner concedes that the object to be accomplished may be directed by the legislature to be carried into effect by subordinate officers and bodies having better opportunities for accomplishing the object, or doing the thing understandingly, and that the legislature may delegate the power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend . . . ." (P. 418.) Holding that the statute has not "delegated to the board power to make law" (p. 419), the court stated : "Unless the power thus granted to fix the salary or wages of its own employees is an unlawful delegation of power to the board, and we do not intimate that it is, or that it would be conceded by the petitioner to be unlawful, the power granted by the statute under attack to fix a minimum wage for the employees of contractors with the district would not be an unlawful delegation." (P. 419.)

Although the prevailing wage statute, like the questioned ordinance, entails the alleged dual dangers which defendants contemplate here : that the legislative body will neither know in advance nor control the level of the "general prevailing rate of *per diem* wages," this court did not strike down the statute on that ground but sustained it. The *Whitsett* decision

be; it determines whether higher rates will be paid in any or all of the classifications. The Alhambra city manager reports to the council his findings upon the average Los Angeles rates; these serve only as a basement for the council's action; the council itself sets the salaries; the council exercises, and does not delegate, legislative power.

[4]The current counterpart of the statute involved in *Whitsett* is Labor Code section 1773. Although this court has not directly confronted an attack on the validity of section 1773, we have implicitly sustained it. (*Franklin* v. *City of Riverside* (1962) 58 Cal.2d 114 [23 Cal.Rptr. 401, 373 P.2d 465]; contra, *Parrack* v. *City of Phoenix* (1959) 86 Ariz. 88 [340 P.2d 997]; *Adams* v. *City of Albuquerque* (1957) 62 N.M. 208 [307 P.2d 792].) Moreover, the federal Walsh-Healey Act (41 U.S.C. § 35(b)) contains the same prevailing wage provision for contracts with the federal government; its validity has been upheld. (*Perkins* v. *Lukens Steel Co.* (1940) 310 U.S. 113 [84 L.Ed. 1108, 60 S.Ct. 869].)

has an even deeper significance in the present matter because in substance it applies to the kind of enactment we ponder here. The instant ordinance in essence adopts the "prevailing" rate for firemen in the larger locality which Alhambra adjoins. Although such a rate is fixed by a governmental rather than a private agency, that factor is an inevitable one, since firemen are employed by public and not private entities, and it surely cannot serve to render one enactment an unlawful delegation of legislative power and the other not. Hence *Whitsett*, in substance, disposes of the present issue.[5]

Decisions in other states likewise sustain the power of the legislative body to base compensation for the involved employees upon comparable prevailing wages. In *Baughn* v. *Gorrell & Riley* (1949) 311 Ky. 537 [224 S.W.2d 436], for example, a statute requiring the board of education to ascertain the prevailing rates of wages and pay not less than this rate on public works projects was attacked as an unlawful delegation of legislative power to those who, cumulatively, "set" the prevailing rate. In rejecting this contention, the court said: "In the eyes of the Legislature, wages paid under agreements between labor organizations and employers constitute a fair criteria [*sic*] of reasonable compensation for different types of work. It will be noted these wages are agreed upon as the result of bargaining between labor on one side and the employer on the other . . . [T]he competitive market will tend to establish a fair wage." (311 Ky. at p. 541.) The court concluded that "the Legislature has not delegated the exercise of its legislative function to private persons or interests." (311 Ky. at p. 542.)[6]

Nor does the fact that a third party, whether private or governmental, performs some role in the application and

К

---

[5] *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626 [12 Cal.Rptr. 671, 361 P.2d 247], which involved a county requirement that employees receive a salary at least equal to that paid to comparable persons in private employment, makes the same point. We characterized the county board of supervisors' duty as a "fact-finding function . . . in finally fixing the rate of compensation at or above the minimum coincident with the prevailing wage found" and stated that this fact-finding function "precede[s] . . . the legislative act." (55 Cal.2d at p. 635; see also *San Bernardino Fire & Police Protective League* v. *City of San Bernardino* (1962) 199 Cal.App.2d 401, 416 [18 Cal.Rptr. 757].) That which "precedes legislative action" cannot literally constitute a delegation of the power to legislate.

[6] The California cases of *In re Burke* (1923) 190 Cal. 326 [212 P. 193], and *Adams* v. *Wolff* (1948) 84 Cal.App.2d 435 [190 P.2d 665], cited by defendants, do not pass upon the present issue. *Burke* involves an attempted adoption of a future statute of another state; the court specifically reserves the point here at issue, as does *Wolff*. The cited case of

implementation of an established legislative scheme render the legislation invalid as an unlawful delegation. Thus, in *Brock* v. *Superior Court* (1937) 9 Cal.2d 291, [71 P.2d 209 114 A.L.R. 127], a statute precluding the California Director of Agriculture from entering into a marketing agreement without the assent of a percentage of persons engaged in the industry was attacked as an unlawful delegation to those private persons. In rejecting this contention, this coutr said: "a statute is not invalid merely because it provides for consent of interested persons to the contemplated regulation." (9 Cal.2d at p. 299.)[7]

Furthermore, we find here, as we said in *Wilke & Holz-*

---

*Mitchell* v. *Walker* (1956) 140 Cal.App.2d 239 [295 P.2d 90], does conflict with part of our ruling in the instant case, and to that extent it is disapproved.

In upholding the definition of prohibited drugs by future decision of a recognized private pharmaceutical institution, the Supreme Court of Wisconsin, in *State* v. *Wakeen* (1953) 263 Wis. 401, 411 [57 N.W.2d 364], held: "This is not a case of the *delegation* of legislative powers. The publications referred to in the statute are *not* published *in response* to any delegation of power, legislative or otherwise, by the statute. The compendia are published independently of the statute and not in response to it." (Italics added.) Similarly, in our case an independent, authoritative source determines the comparable Los Angeles rates, and such decision is made "independently of the statute and not in response to it." For other out-of-state cases, see *Crowley* v. *Thornbrough* (1956) 226 Ark. 768, and cases cited at page 774 [294 S.W.2d 62], and *State* ex rel. *Kirschner* v. *Urquhart* (1957) 50 Wn.2d 131 [310 P.2d 261]. See generally 1 Davis, Administrative Law Treatise, *supra,* § 2.14; Note (1934) 34 Colum.L.Rev. 1077, 1084-1086.

[7]In *Currin* v. *Wallace* (1939) 306 U.S. 1 [83 L.Ed. 441, 59 S.Ct. 379], a similar challenge was levelled against the Tobacco Inspection Act of 1935, a statute authorizing the federal Secretary of Agriculture to designate markets to be regulated only if two-thirds of the growers affected favored such a designation. The Supreme Court upheld the act, noting that "[t]his is not a case where Congress has attempted to abdicate, or to transfer to others, the essential legislative functions with which it is vested by the Constitution. . . . So far as growers of tobacco are concerned, the required referendum does not involve any delegation of legislative authority. Congress has merely placed a restriction upon its own regulation by withholding its operation as to a given market 'unless two-thirds of the growers voting favor it.' . . . Here it is Congress that exercises its legislative authority in making the regulation and in prescribing the conditions of its application. The required favorable vote upon the referendum is one of these conditions." (306 U.S. at pp. 15-16 [83 L.Ed. at pp. 451-452]; see also *Parker* v. *Brown* (1943) 317 U.S. 341, 352 [87 L.Ed. 315, 326, 62 S.Ct. 307]; *Floresta, Inc.* v. *City Council* (1961) 190 Cal.App.2d 599, 610 fn. 4 [12 Cal.Rptr. 182] and cases cited therein.)

The private act of the producer in entering into a contract setting a price for the resale of his own brand is neither the performance of a legislative function nor the exercise of an unlawfully delegated power. (*Scoville Mfg. Co.* v. *Skaggs etc. Drug Stores* (1955) 45 Cal.2d 881 [291 P.2d 936]; see *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, 369.)

*heiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, 369, that the "grant of authority [is] . . . accompanied by safeguards adequate to prevent its abuse." ■ As Professor Davis has stated, "The need is usually not for standards but for safeguards. . . . [T]he most perceptive courts are motivated much more by the degree of protection against arbitrariness than by the doctrine about standards . . . ." (1 Davis, Administrative Law Treatise, *supra,* § 2.15.) The requirement for "standards" is but one method for the effective implementation of the legislative policy decision; the requirement possesses no sacrosanct quality in itself so long as its purpose may otherwise be assured.

The Oregon case of *Warren* v. *Marion County, supra,* 222 Ore. 307, illustrates the point that safeguards inherent in a statute which protect against its arbitrary exploitation obviate the need for standards.[8] In that case, the following ordinance was attacked as an invalid delegation of legislative power because it failed to provide sufficient standards: "ORS 215.-108 *Building code ordinance.* (1) The governing body of a county may adopt ordinances establishing building codes for the county, or any portion thereof, in conformity with the standards set forth in ORS 215.104. . . . (2) Any governing body of a county which adopts ordinances establishing building codes shall by ordinance provide procedures for appeals from decisions made under the authority of the ordinances establishing building codes." In rejecting this challenge, the Oregon Supreme Court stated: "It is now apparent that the requirement of expressed standards has, in most instances, been little more than a judicial fetish for legislative language, the recitation of which provides no additional safeguards to persons affected by the exercise of the delegated authority. . . . [T]he important consideration is not whether the statute

---

[8]Other cases have also recognized that "standards" consitute merely one method, albeit the most common one, of assuring that the legislative body does not unlawfuly delegate its power. The New Jersey Supreme Court, in striking down a delegation to The Medical Society of New Jersey, stated: "We think such a power . . . may not validly be delegated by the Legislature to a private body . . . at least where the exercise of such power is not *accompanied by adequate legislative standards or safeguards whereby an applicant may be protected against arbitrary or self-motivated action . . . ."* (*Group Health Ins.* v. *Howell, supra,* 40 N.J. 436, 445.) (Italics added.) The Supreme Court of Maryland has asserted: "[A]n ordinance which delegates a part of the police power to a zoning board may be valid, even though it confers upon the board a certain discretion in the exercise of that power, provided that its discretion is sufficiently limited by rules and standards to protect the people against any arbitrary or unreasonable exercise of power." (*Heath* v. *Mayor & City Council of Baltimore, supra,* 187 Md. 296, 303 (dictum).)

delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action.'' (222 Ore. at p. 314.) The court concluded: ''We believe that the appeals procedure required by ORS 215.108(2) provided a sufficient safeguard to persons wishing to contest administrative action in the enforcement of the code.'' (P. 315.)

The proposed Alhambra ordinance contains built-in and automatic protections that serve as safeguards against exploitive consequences from the operation of the proposed ordinance. Los Angeles is no more anxious to pay its firemen exorbitant compensation than is Alhambra. Los Angeles as an employer will be motivated to avoid the incurrence of an excessive wage scale; the interplay of competitive economic forces and bargaining power will tend to settle the wages at a realistic level. As we noted in an analogous area involving the establishment of prices: ''the Legislature could reasonably assume that competition . . . coupled with . . . bargaining power . . . would provide a safeguard against excessive prices. In all probability, that safeguard is at least as effective as any which the Legislature could be expected to provide by promulgating explicit standards . . . .'' (*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, 367-368.)

The criteria set up by the proposed enactment reasonably relate to the fulfillment of the legislative purposes. If an external private or governmental body will be involved in the application of the legislative scheme, it must be an agency that the Legislature can expect will reasonably perform its function. If, for instance, the statute provides that salaries are to be adjusted to future changes in the cost of living, the legislation must designate a body, such as the United States Department of Labor, which may be expected to reasonably perform the function of ascertaining the cost of living. Such a qualification to the operation of the statute parallels that placed upon the ministerial officer who is designated to formulate the rules or regulations under a statute which expresses the legislative policy in the matter. Thus the officer cannot promulgate a rule or regulation ''which cannot be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute.'' (*First Industrial Loan Co.* v. *Daugherty, supra,* 26 Cal.2d 545, 550.)

Applying these criteria to the instant situation, we conclude

that the City of Alhambra could properly expect that the appropriate bodies of the City of Los Angeles and the County of Los Angeles would reasonably discharge their obligations. Once Alhambra establishes the policy of parity between the Alhambra and the Los Angeles wages, the fact that the Los Angeles governing bodies participate in setting Los Angeles salaries does not defeat the Alhambra legislation since Alhambra could expect that the authorities would reasonably investigate, negotiate, and finally determine such salaries. Thus the designated method appropriately attains the purposes of the ordinance.

Indeed, the method comports with the practical necessities of city governments. As an effort both to achieve fair wage rates and to compete effectively for competent employees, many city governments have based employee wages to some degree on rates paid in surrounding communities. (For discussion of similar provisions in other cities, see, e.g., *San Bernardino Fire & Police Protective League* v. *City of San Bernardino, supra,* 199 Cal.App.2d 401; *Walker* v. *County of Los Angeles, supra,* 55 Cal.2d 626; *Parker* v. *Bowron* (1953) 40 Cal.2d 344 [254 P.2d 6]; *Adams* v. *Wolff, supra,* 84 Cal.App. 2d 435; see, for instance, Culver City Ordinance No. 193½.) Reliance on rates in other communities, moreover, obviates any need for the expense, perhaps oppressive in smaller communities, of surveys or other expert assistance in determining appropriate wage scales.

In sum, the ordinance in question, if enacted, would not unlawfully delegate legislative power. As long ago as 1917 this court recognized that legislative bodies have neither the resources nor the expertise to deal adequately with every minor question potentially within their jurisdiction. "Even a casual observer of governmental growth and development must have observed the ever-increasing multiplicity and complexity of administrative affairs — national, state, and municipal—and even the occasional reader of the law must have perceived that from necessity, if for no better grounded reason, it has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions, and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done

at all . . . ." (*Gaylord* v. *City of Pasadena, supra,* 175 Cal. 433, 436.)

The complexity of government in the span of a half century since that analysis has illustrated its verity. Doctrinaire legal concepts should not be invoked to impede the reasonable exercise of legislative power properly designed to frustrate abuse. ▮ Only in the event of a total abdication of that power, through failure either to render basic policy decisions or to assure that they are implemented as made, will this court intrude on legislative enactment because it is an "unlawful delegation," and then only to preserve the representative character of the process of reaching legislative decision.

The judgment of the trial court granting a peremptory writ of mandate is affirmed.

Traynor, C. J., Peters, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. If by charter amendment the people of Alhambra undertook to establish a minimum wage for members of the Fire Department of the City of Alhambra by reference to an average (to be computed periodically) of the wages generally prevailing for work of a similar character in, for example, all of the cities in the same county (County of Los Angeles) or all of the cities and unincorporated areas within a more limited geographical area, or even of a substantial number of such communities of comparable size and with similar fire problems, then I could agree that under the prevailing wage cases there would be no question of unlawful delegation of legislative authority. As an amendment to the organic law of the city this would be a lawful limitation upon the exercise of the legislative power of the local legislative body and also upon the initiative power of the city's electorate. But this is not what is attempted here. The city charter sets forth how the legislative power of the city is to be exercised and places equal power to legislate in the council and the electorate; what one may do so may the other. But here, one, the electorate by initiative ordinance, seeks to limit the *future* exercise of power by the other and this violates fundamental concepts of municipal law. Such a limitation upon future actions by the council or, if attempted by the council, upon future actions by the electorate, is void and could only be effected by an amendment of the city's organic law—the city charter. The latter may be amended only in the manner prescribed in the Constitution.

Furthermore, when an ordinance selects from the community only two public agencies and specifies that the average wage paid by those two agencies from year to year shall be the minimum wage to be paid to Alhambra firemen, there has plainly been an invalid delegation to the legislative bodies of those agencies of the authority vested by Alhambra's Charter in the Alhambra City Council to "establish" the salaries of the Alhambra Fire Department. That such a delegation of legislative power and responsibility is illegal was the holding of the court in *Mitchell* v. *Walker,* 140 Cal.App.2d 239 [295 P.2d 90], in which case this court denied a hearing. The majority opinion erroneously, I submit, disapproves the *Walker* decision (fn. 6, *ante,* pp. 379-380).

The ordinance under consideration here would strip from Alhambra's City Council its discretion to determine one end of the wage scale (the minimum), and delegate that discretion to the governing bodies of two outside public agencies which are entirely without responsibility to the City of Alhambra, its employees, voters, or taxpayers. This seems to me to offend democratic principles in addition to the basic requirements of the city's charter. The record affords no basis whatever for the assumption indulged in by the majority that the average wage paid by the two handpicked agencies represents the prevailing wage in the general area. Obviously, the size of a city, the types of structures (residential, industrial, multi-dwellings), the heights of its buildings, the classes of fire equipment, living conditions, etc., vary to a great degree within a geographical area the size of Los Angeles County and wages may vary to a considerable degree depending upon local conditions. Furthermore, the tax resources which a small city, such as Alhambra (population 64,500), has with which to cope with such problems may be substantially different from those of Los Angeles (population 2,743,500). Under our system of government such inquiries and policy determinations are for the duly elected and responsible officials of the particular city involved and not for this court.

In my view, the Alhambra City Council itself could not validly delegate its authority and responsibilities in the manner here attempted by the proposed ordinance. Since under section 176 of the Alhambra City Charter the electorate purports to exercise directly by means of the initiative only such legislative action as the council itself could lawfully enact, the ordinance in question was properly refused submission to the voters. No one suggests that the initiative may be used to

enact legislation which the council itself could not enact. It follows that the judgment granting the writ should be reversed.

McComb, J., concurred.