[Civ No. 44526. Second Dist., Div. Four. Apr. 24, 1975.]

CITY OF DOWNEY et al., Plaintiffs and Appellants, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

622

COUNSEL

Burke, Williams & Sorensen and Mark C. Allen, Jr., for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Respondent.

OPINION

COLE, J.*—The appellants are the Cities of Downey and Glendora, as well as two individuals employed by Downey, an employee of Glendora, and an employee of the City of Santa Monica. This litigation revolves around the effect of certain legislation (Stats. 1971, ch. 170) amending the Public Employees' Retirement Law (Gov. Code, §§ 20000-21500.)[1]

*Contentions*

The municipal appellants urge that the 1971 amendments had the effect of giving or lending their credit to the state and to other contracting agencies under the retirement law, in violation of former section 25, article XIII, of the California Constitution.[2]

Downey, a charter city, likewise argues that the amendment violates the home rule powers conferred upon it pursuant to article XI, section 5, of the Constitution.

---

*Assigned by the Chairman of the Judicial Council.

[1]All statutory references hereafter, unless otherwise noted, are to the Government Code.

The Public Employees' Retirement Law, hereafter referred to as the retirement law, was known as the State Employees' Retirement Law prior to October 1, 1967, (§ 20004). Similarly, the system created by the retirement law is now known as the Public Employees' Retirement System and previously was called the State Employees' Retirement System. Under section 20004, the old references, statutory and contractual, are to be construed to refer to and mean the retirement law and the system as now designated.

[2]The prohibition concerning the giving or lending of credit is now found in article XVI, section 6 of the Constitution. It reads in applicable part: "The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have the power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . . "

Appellant Jeremy B. Ferris, an employee of the chartered City of Santa Monica, makes the converse claim: that only that city, and not the Legislature, could make changes in amounts to be contributed for retirement purposes. And, arguing that the effect of the 1971 amendments was to make his retirement contributions potentially usable to help cover a statewide deficit in the system, he contends that the amendments unconstitutionally impaired the obligations of his contract of employment. Appellants Robert L. Shand and Robert E. Griffin, employees of Downey, make the same claims as Ferris. Appellant William R. Kelley, Jr., an employee of the general law City of Glendora, makes only the second claim asserted by the other individual appellants.

The trial court found against these contentions. We agree and affirm the judgment.

## Background

Under the retirement law, municipal corporations may participate in and make their employees members of the system by entering, in a prescribed manner, into a contract with respondent Board of Administration (hereafter "board").[3] Santa Monica entered into such a contract, amended many times since, in 1944. Downey contracted with the board in 1958, and its contract has been the subject of various amendments. Glendora initially entered into its contract with the board in 1956. That contract was since amended.

## Findings

Pursuant to stipulation the court made a number of findings concerning the method under which the system formerly operated, the way it has operated since the 1971 amendments, and the changes resulting in the rights and obligations of the individuals.

With respect to the way the system formerly operated the court found that each employee of the state and of each contracting agency had an account. The funds paid into the system by each employee were actuarially computed to fund a portion of the benefits the employee would receive on retirement and were credited to his account, with interest. The state itself and each contracting agency had separate accounts for its contributions toward the retirement benefits for its

---

[3]The management and control of the system is vested in the board (§ 20103).

employees. The contribution of each agency and of the state was computed on an actuarial basis as a percentage of payroll to provide a portion of the retirement benefits to be paid for that agency's or the state's employees. The contribution of each contracting agency and that of the state was recomputed on an actuarial basis each four years and the percentage of payroll contributions was adjusted upward or downward so that sufficient funds would be generated to provide, in combination with the funds paid in by the employees, the retirement benefits provided by law for the employees and their dependents of that contracting agency or the state. The separate accounting was maintained for employees actually retired. At the time of retirement, the employee's accumulated contributions and funds of the contracting agency or the state sufficient to pay, in the aggregate, the benefits due to that employee and his dependents were transferred to an employee's annuity reserve account and an employer's pension reserve account, respectively, each separately maintained for each contracting agency and for the state.

The findings concerning the way the system had operated also set forth 13 instances, between 1943 and 1970, in which amendments to the act provided increased benefits to all employees of the state and all contracting agencies. Sometimes increased benefits were provided only to employees of contracting agencies which accepted the amendment and agreed to increase the percentage of payroll contribution made by them.

Under the 1971 amendment, the court found, the system operated as follows. Employees of the state and the contracting agencies no longer contributed on the basis of an individual actuarial computation of a portion of the benefits each will receive. Rather, all employees contributed (subject to certain adjustments not material here) a flat 7 percent of their salaries. The employee's account was maintained intact. The system no longer maintained a separate current account for the state and for each contracting agency. Contributions by the state and each agency for their miscellaneous employees[4] were merged so that all of these accounts are now in a single account[5] (with separate accounting still being maintained for prior service).

---

[4]Miscellaneous employees are all employees except patrol and safety members in the case of the state (§ 20014) and except safety members and, for some purposes school members, in the case of contracting agencies (§ 20018).

[5]Effective January 1, 1975, various amendments to the retirement law restored the state to the basis existing before the 1971 amendments; that is, separate accounts are again maintained for state assets and liabilities. (§ 20230 as amended by Stats. 1974, ch. 1399, § 2.) The merger of accounts still exists for contracting agencies, but by a tour

Each contracting agency contributes to the merged current account the same percentage of its payroll for miscellaneous members. Upon retirement of an employee, his contributions are transferred to a merged employee's annuity reserve account. Also transferred is a sum from the merged current account sufficient to provide on an actuarial basis the benefits to which the employee and his dependents are entitled.

The court also found that the 1971 amendments increased Ferris' rate of contribution and the retirement allowance which he would receive upon retirement at various assumed ages, reduced his mandatory retirement age from 70 to 67 and changed the optional benefit which his spouse will be eligible to receive. A similar effect resulted with respect to each of the other individual appellants, except that Shand's rate of contribution was decreased rather than increased.

The court then made findings concerning the legislative history of chapter 170 of the 1971 statutes. They need not be recited except to state that among the objectives of the legislation, reflecting varying viewpoints of the California State Employees' Association, on the one hand and the administration on the other hand, was an improvement in the amount of retirement benefits and a mandatory reduction in the retirement age.

Concerning the effect of the amendments the court found that the merger of the assets and liabilities of Downey and Glendora with those of the state and other contracting agencies for the purpose of determining the rate of contribution by the two cities will not necessarily increase the rates. The rates will increase or decrease depending on the experience of the cities as compared with the group average. Further findings were that only future experience could determine whether actuarial deficiencies of the cities were changed by the merger of the accounts; and that such deficiencies are not current monetary deficiencies, do not represent an imbalance between existing liabilities and assets and do not constitute presently payable benefit payments. Glendora, Downey and Santa Monica were found to have consented by contract to accept mandatory changes in the retirement law. Another finding was that the cities will not be required to pay retirement expenses of state

through the arcane provisions of the statute it can be dimly perceived that if a contracting agency elects to adopt certain new and improved benefits for its employees, which came into effect since certain 1973 amendments to the code, such election would have the effect of restoring as to those contracting agencies the method of funding in operation prior to the 1971 amendments. (§§ 20740, 20493.5, and 20759, read in that sequence.)

employees and employees of other contracting agencies by reason of the adoption of the 1971 legislation. The court also found that the benefits afforded by enactment of chapter 170, Statutes of 1971, adequately offset the detriments imposed by the chapter on the named individual plaintiffs.

*The 1971 Legislation Does Not Give or*
*Lend the Credit of Contracting Agencies*
*in Violation of the Constitution*

Article XVI, section 6, of the Constitution (fn. 2, *supra*) provides that the Legislature has no power to give or lend the credit of any city to any municipal corporation nor to pledge such credit for the payment of the liabilities of any municipal corporation.

Appellants recognize that this provision does not prohibit the payment of pensions, since they are not a gift of public funds, even when granted retroactively on account of the services of a pensioner already retired. (*Sweesy* v. *L. A. etc. Retirement Bd.* (1941) 17 Cal.2d 356, 359-362 [110 P.2d 37].) They argue that the 1971 legislation lent the credit of Downey and Glendora to the state and other cities because (1) the administration of the system with the merged accounts, and merged assets and liabilities will in the future require them to pay a portion of the costs of the retirement benefits of the miscellaneous employees of the state and of other contracting agencies; and (2) by increasing the value of some retirement benefits without their concurrence and by reducing some employee contributions the Legislature thereby gave and lent the cities' credit to their employees. They cite *Veterans Welfare Board* v. *Jordon* (1922) 189 Cal. 124 [208 P. 284, 22 A.L.R. 1515], a case which stated that the constitutional provision should be liberally construed.

Appellants argue that no evidence supports the court's findings to the effect that the merger of the accounts did not result in requiring Downey and Glendora to pay expenses of other agencies. The evidence did, however, show that it was speculative whether the merging of accounts would or would not favor any particular contracting agency. ▬ Since the intendment is in favor of constitutionality, speculation should not be allowed as a basis for overturning the operation of a statute. (*Estate of Scott*, 181 Cal.App.2d 605, 608 [5 Cal.Rptr. 393]; *In re Johnson*, 62 Cal.2d 325, 332 [42 Cal.Rptr. 228, 398 P.2d 420]; *People* v. *Serrano*, 33 Cal.App.3d 331, 338 [109 Cal.Rptr. 30].)

■ Another reason also militates against holding that the statute at issue here violates the prohibition against giving or lending credit. That is the rule "that if a public purpose is served by the expenditure of public funds, article XIII, section 25, is not violated even though there may be incidental benefits to private persons [citations omitted] . . . [and] that the determination of what constitutes a public purpose is primarily a matter for the Legislature, . . . " (*Board of Supervisors* v. *Dolan* (1975) 45 Cal.App.3d 237, 243 [119 Cal.Rptr. 347] and cases cited therein.) We cannot hold that it was unreasonable for the Legislature, which has determined that "contributions are similar to premiums under insurance policies," to adopt a system whereby those paying the "premiums" do so on a pooled basis, particularly where the system is endowed with the admitted public purpose found in the retirement law. The statute does not offend article XVI, section 6, or its predecessor.

### The Home Rule Provisions
### Were Not Infringed

Appellants urge that chapter 170 of the 1971 statutes is invalid with respect to employees of the chartered cities of Santa Monica and Downey. ■ Article XI, section 5, subdivision (b) of the California Constitution does give full power to charter cities to provide for the compensation of their employees. It is clear that provisions for pensions relate to compensation and are municipal affairs within the meaning of the Constitution. (See *Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 345, 351-352 [71 Cal.Rptr. 135, 444 P.2d 711].) It is also clear that a charter city has full control over its municipal affairs, and in respect to them is not subject to general law except as the charter may provide. (*City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, 599 [212 P.2d 894]; *City of Roseville* v. *Terry*, 158 Cal.App.2d 75, 76 [322 P.2d 44]; *City of Santa Monica* v. *Grubb*, 245 Cal.App.2d 718, 724 [54 Cal.Rptr. 210].) However, "The municipal affairs doctrine does not foreclose state legislation with respect to municipal affairs of a home rule city; it is only in the event of a conflict between local and state regulations or state preemption of local regulation that the question whether the matter regulated is a municipal affair or of statewide concern becomes determinative. (*Bishop* v. *City of San Jose*, 1 Cal.3d 56, 62 . . . )" (*CEEED* v. *California Coastal Zone Conservation Com.*, 43 Cal.App.3d 306, 320 [118 Cal.Rptr. 315].)

The provisions of chapter 170 do not conflict with local regulation,[6]

---

[6]In fact the Downey contract expressly provides that it is subject to all future amendments to the retirement law. The *apparent* intent of the Santa Monica contract *as*

nor do they involve a question of preemption. Therefore, the home rule doctrine is not properly resorted to at all.

The appellants urge nevertheless that allowing the state to control the provisions of the administration of the retirement law through subsequently enacted legislation involves an invalid delegation of legislative authority by the charter cities, since the Constitution gives them plenary power over their municipal affairs. ■ Assuming that the home rule doctrine is applicable, there still would not be an improper delegation. While the doctrine prohibits the delegation of legislative power, as applied to a city (*City of Redwood City* v. *Moore,* 231 Cal.App.2d 563, 576 [42 Cal.Rptr. 72]; *Kugler* v. *Yocum,* 69 Cal.2d 371, 375 [71 Cal.Rptr. 687, 445 P.2d 303]) that doctrine is limited in its scope. (*Kugler* at pp. 375-376.) Its purpose is to assure that truly fundamental issues are resolved by the legislative body and that any grant of authority is accompanied by sufficient guides adequate to prevent its abuse. This is upon the premise that while the legislative body must effectively resolve the fundamental issues, the complexities of modern life make it imperative to delegate some functions. (*id.* at pp. 376, 383, 384.)

"Only in the event of a total abdication of [legislative] power, through failure either to render basic policy decisions or to assure that they are implemented as made, will [a] court intrude on legislative enactment because it is an 'unlawful delegation,' and then only to preserve the representative character of the process of reaching the legislative decision." (*Id.* at p. 384.) Accordingly, *Kugler* upheld the validity of an ordinance of the chartered City of Alhambra which provided that police and fire salaries should be computed in an amount equaling an average of the salaries for comparable purposes paid to members of the Los Angeles City and County Fire Departments.

*Martin* v. *County of Contra Costa,* 8 Cal.App.3d 856, 862-863 [87 Cal.Rptr. 886], furnishes an apt analogy to the present situation. Involved there was the constitutional requirement that the Legislature prescribe for each municipal court the compensation to be paid the attaches of that court. The Legislature adopted a statute setting forth the salaries to be

---

*amended in 1960* is similar, although amendments thereto dated prior to 1960 were limited to the law existing at the time. Section 20493 as amended effective January 1, 1975, provides: "Any contract heretofore or hereafter entered into shall subject the contracting agency and its employees to all provisions of this part and all amendments thereto applicable to members, local miscellaneous members, or local safety members except such as are expressly inapplicable to a contracting agency unless and until it elects to be subject to such provision."

paid but also providing that any subsequent change in benefits provided for by the local salary ordinance adopted by the board of supervisors with respect to county employees should apply equally to employees of the municipal courts and the marshal's offices. The statutory provision was upheld as not being an abdication of the Legislature's duty to prescribe the compensation.

The charter provisions making applicable present and future provisions of the retirement law also have built-in safeguards. They include the right of contracting agencies to withdraw from the system and, as noted above (fn. 5, *supra*), the right of the cities to, in effect, revert to the pre-1971 method of accounting adopted by the board. Further, any delegation by the cities is, anomalously, to the Legislature which is the body regarded as the most representative organ of government and to which legislative determinations are normally assigned. (*Clean Air Constituency* v. *California State Air Resources Bd.* 11 Cal.3d 801, 817 [114 Cal.Rptr. 577, 523 P.2d 617].)

For all these reasons chapter 170 of the 1971 statutes withstands the constitutional attack that it violates the home rule provisions of the Constitution.

*The 1971 Legislation Does Not*
*Infringe the Rights of the*
*Individual Appellants*

For the same reasons discussed above concerning the municipal appellants, there is no merit to the contention advanced by the individuals employed by Santa Monica and Downey that only their employer, and not the Legislature, could make changes in the rates of their retirement contributions. The home rule provision, as we have noted, does not so operate in this case.

This leaves for discussion the contentions of all of the individual appellants that the changes brought about by the 1971 statute unconstitutionally impaired the obligation of their respective contracts of employment. We disagree. ■ The operative provisions of law are stated in *Allen* v. *City of Long Beach*, 45 Cal.2d 128, 131 [287 P.2d 765]: "An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. (*Wallace* v. *City of Fresno*, 42 Cal.2d

180, 184 [265 P.2d 884]; *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 214 [217 P.2d 660]; *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 854-855 [179 P.2d 799].) Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. (*Wallace* v. *City of Fresno,* 42 Cal.2d 180, 185 [265 P.2d 884]; See *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 214, 218-219 [217 P.2d 660].) In the present case it appears that section 187.2 substantially decreases plaintiffs' pension rights without offering any commensurate advantages, and there is no evidence or claim that the changes enacted bear any material relation to the integrity or successful operation of the pension system established by section 187 of the charter."

In *Kern* v. *City of Long Beach, supra,* the court said: "Thus it appears, when the cases are considered together, that an employee may acquire a vested contractual right to a pension but that this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves. The statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension. There is no inconsistency therefore in holding that he has a vested right to a pension but that the amount, terms and conditions of the benefits may be altered." (29 Cal.2d at p. 855.)

The facts of this case show that the advantages to the members of the system, brought about by the 1971 amendments, outweigh the disadvantages, as the court below found, when considered from the individual viewpoints of the members. (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 449 [326 P.2d 484].)

The most obvious disadvantage is that, with the exception of appellant Shand, there was an increase in the rate of contribution of each employee to the system. Offsetting this, however, is the increase in the amount of retirement allowance which each employee, including Shand, will be entitled to receive, as compared to the amount which would have been payable prior to the 1971 legislation. There is no disadvantage at all to Shand.

The reduction in the mandatory retirement age from 70 to 67 could be regarded as an advantage when looked at from the point of view of one employee and as a disadvantage when looked at by another. It is at least as advantageous as not, so that it cannot furnish a ground for legal complaint. (Compare *Amundsen* v. *Public Employees' Retirement System,* 30 Cal.App.3d 856, 859 [106 Cal.Rptr. 759]—amendment of retirement provision so as to delay for one year an employee's eligibility to retire did not impair the obligation of his contract—with *Kern* v. *City of Long Beach, supra*—impermissible elimination of retirement benefits 32 days before employee eligible—and with *Orange County Employees' Assn.* v. *Board of Administration,* 39 Cal.App.3d 825, 828-829 [114 Cal.Rptr. 528]—impermissible, because of lack of compensating advantage, to change retirement eligibility rules so as to postpone right to retire of one already eligible to do so.) In *Amundsen* the court noted that the employee's subjective intent to retire on the earlier date was not a factor in determining the constitutionality of the amendment. Here appellant Shand challenges the age 67 retirement provision, the court finding that he had intended to work until he was 70. He will, however, be eligible for the higher benefits, for which he is contributing a *lesser* amount, at the time he is 67.

The only other change in the individual appellants' rights which the court found to have been caused by the 1971 amendments to the retirement law was that the spouses of the employees will be eligible to receive, at their option, a monthly allowance in the amount of one-half of the employee's allowance upon his death before retirement (and after he attains eligibility to retire) in lieu of her entitlement to a lump sum amount equal to the employee's accumulated contribution plus one-half of the annual compensation in the year preceding death. Such a change is one which seems advantageous. (See, *Speight* v. *Million,* 235 Cal.App.2d 233, 242 [45 Cal.Rptr. 191].)

The judgment is affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 19, 1975.