[Civ. No. 23183. First Dist., Div. Two. Mar. 17, 1967.]

ROY ESTES et al., Plaintiffs and Appellants, v. CITY OF RICHMOND et al., Defendants and Respondents.

Connolly & Curtin, Thomas F. Curtin, Davis & Cowell, Davis, Cowell & Bower and Robert P. Cowell for Plaintiffs and Appellants.

James P. O'Drain, City Attorney, Robert Collins, Assistant City Attorney, John R. Pierce, Deputy City Attorney, and Daniel J. Curtin, Jr., for Defendants and Respondents.

SHOEMAKER, P. J.—Plaintiffs brought this action on behalf of all the active and retired members of the police and fire departments of Richmond against defendant City of Richmond and its Director of Finance.[1] Pursuant to the first four counts of the complaint, plaintiffs sought declaratory relief and a writ of mandate compelling defendants to treat certain "hazardous duty" pay as part of plaintiffs' salaries for the purpose of determining the amount of contributions to be paid into and pension benefits to be paid from the Police and Firemen's Pension Fund of the City of Richmond. Pursuant to the fifth and final count of the complaint, plaintiffs sought a writ of mandate compelling the city to nullify a contract which purportedly provided that all policemen and firemen hired by the city on or after October 16, 1964, should be included in the State Employees' Retirement System, rather than the city's Police and Firemen's Pension Fund.

The facts, which are virtually without conflict, may be set forth as follows: Richmond is a chartered city organized and existing under section 8, article XI, of the California Constitution. In 1936, the voters of Richmond adopted article XI of the city charter, providing for the establishment, maintenance and administration of the Police and Firemen's Pension Fund. Section 2 of article XI provided that any member of the police or fire department who had served 25 years in the aggregate should be eligible to retire on a yearly pension equal to one-half the annual salary attached to the rank or position which he had held one year prior to retiring. Section 2 further provided that in case of any change in salary at any time after retirement, the pension should be one-half of such salary as changed. Pursuant to section 13 of article XI, defendant city was required to make semi-monthly payments

---

[1]Although not named in the complaint, the Board of Administration of the State Employees' Retirement System was brought into the action as a conditionally necessary defendant by a court order filed on January 25, 1965. The court thereafter granted said defendant's motion for judgment on the pleadings and on March 18, 1965, ordered that it be dismissed from the action.

into the pension fund in an amount equal to 3 percent of the total semi-monthly payroll of the members of the police and fire departments and was also required to deduct an additional 3 percent from the semi-monthly salary of each member of the police and fire departments and to pay the amounts deducted into the fund. Section 15 of article XI provided that upon the completion of a 10-year period ending June 30, 1947, the pension board should have the power, whenever the pension fund became insufficient to meet costs, to make demands upon the city council, and equally upon the members of the police and fire departments, for additional payments of amounts which should in no event exceed 10 percent of the total annual payroll of the members of the police and fire departments.

In 1938, the voters of defendant city adopted article XII of the city charter, creating a general pension fund covering all city employees other than members of the police and fire departments. In 1953, article XII, was amended by the voters so as to authorize the city to execute a contract with the State Employees' Retirement System and place under said system all employees hired after July 1, 1953, and all employees who were hired prior to such date but who elected to waive their rights in the general pension fund.

In 1963, the voters of defendant city amended the city charter so as to adopt the municipal affairs doctrine contained in section 6, article XI, of the California Constitution.

In August 1964, defendant city was advised by an actuarial firm that as of January 1, 1963, the Police and Firemen's Pension Fund had an unfunded liability of approximately 13½ million dollars. Shortly thereafter, on September 14, 1964, the city council passed Ordinance No. 63 N.S., which authorized defendant city to amend its contract with the State Employees' Retirement System and place under said system all policemen and firemen hired by the city on or after October 16, 1964.

On September 28, 1964, the city council adopted Ordinance No. 67 N.S., prescribing the wages, salaries and compensation for city employees. Said ordinance, which became effective on October 1, 1964, provided in pertinent part that all sworn personnel in the police and fire departments who completed at least one tour of duty each month should receive additional hazardous duty pay in the amount of $35 per month.

During the period between October 1, 1964 and trial of the instant action, defendant city paid the increased compensa-

tion authorized by Ordinance No. 67 N.S., but at no time treated such hazardous duty pay as "salary" or as part of the "payroll" of the police and fire departments, within the meaning of article XI of the city charter. Thus, with regard to its treatment of policemen and firemen who were members of the Police and Firemen's Pension Fund, defendant city made no pension deductions from their hazardous duty pay, made no pension contributions based upon such pay and did not increase the pension benefits paid to retired members in an amount equal to one-half such pay.

During the period between October 16, 1964 and trial of the instant action, all policemen and firemen hired by defendant city were granted membership in the State Employees' Retirement System and whatever deductions were made from their salaries were paid into that system and not into the Police and Firemen's Retirement Fund.

On December 14, 1964, one week after the instant action was commenced, the city council amended Ordinance No. 1608 to provide that salary differentials for hazardous duty pay should not be used when making pension system deductions from payrolls or other sources or when computing or otherwise determining pension amounts for retired or retiring employees.

The trial court made findings consistent with the above factual summary and concluded from such findings that salaries and pensions of employees of a chartered city were municipal affairs, as defined in section 6, article XI, of the California Constitution, were subject to the legislative authority of the city council and were not within the jurisdiction of the court; that the amendment to Ordinance No. 1608, providing that hazardous duty pay was not to be considered as salary for pension purposes, was not in conflict with article XI of the city charter and was a valid ordinance enacted pursuant to the municipal affairs doctrine contained in said charter; that article XI of the city charter did not contain any provisions which were limitations or restrictions on the city's municipal power to determine what was salary for pension purposes for police and fire personnel; that the amendatory contract between defendant city and the Board of Administration of the State Employees' Retirement System, which was authorized by Ordinance No. 63 N.S. and which provided that all policemen and firemen hired on or after October 16, 1964, should be members of that system, was a valid contract and not in conflict with article XI of the city

charter; that article XI of the charter did not contain any limitation or restriction which prevented the city, in the exercise of its municipal power, from placing future employees into a separate pension system; that defendant city's action in determining that hazardous duty pay should not be considered for pension purposes and its action in placing future policemen and firemen in a different pension system were well within the scope of the city's legislative powers and were not so palpably arbitrary and erroneous as to warrant the granting of the relief sought by plaintiffs; that all those policemen and firemen, including one of the plaintiffs, who were hired on or after October 16, 1964, had no vested rights in the Police and Firemen's Pension Fund; that the city council's action in providing that future employees should become members of the State Employees' Retirement System was not an attempted amendment of the city charter in violation of subdivision (h), section 8, article XI, of the California Constitution but was within the existing power of the city and was not required to be submitted to the voters of defendant city.

Judgment was entered in favor of defendants and plaintiffs filed notice of appeal therefrom.

Plaintiffs first contend that the trial court erred in upholding defendant city's action in placing all policemen and firemen hired on or after October 16, 1964, under the State Employees' Retirement System rather than the Police and Firemen's Pension Fund. Plaintiffs point out that section 1 of article XI of the city charter provides that "There is hereby created a Pension Fund for the benefit of the officers and members of the police and fire departments of the City of Richmond, to be established, maintained and administered as hereinafter provided." Plaintiffs contend that the use of the word "maintained" shows that the city was required to keep the fund in existence for the benefit not only of those employees who were members of the police and fire departments when article XI was adopted but also for any employees who might thereafter become members of said departments at any future date. Plaintiffs thus reason that the city "removed" employees from the city pension system and contravened the express requirements of the charter when it placed all policemen and firemen hired after October 16, 1964, under another pension system. Plaintiffs assert that such an act amounted to an amendment of the charter and could therefore be accomplished only by a vote of the electorate and not by the city council. Plaintiffs also contend, in their closing brief, that the

continual addition of new employees to the city retirement system is necessary to maintain the fund on a fiscally adequate basis and that the city, by placing all employees hired after a certain date under another pension system, has placed an increased obligation on those employees who are still contributing members of the city system.

Defendants, on the other hand, point out that the city council did not undertake to place future members of the police and fire departments under the State Employees' Retirement System until after the city charter had been amended so as to adopt the municipal affairs doctrine and to empower the city ''to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in [its] Charter; . . .'' Defendants deny that said charter contains any express restriction or limitation against placing future employees of the police and fire departments under another pension system and contend that the charter cannot be construed so as to imply any such restriction.

Defendants' position is sound. Since the pensioning of policemen and firemen is obviously a municipal affair (*Klench* v. *Board of Pension Fund Comrs.* (1926) 79 Cal. App. 171, 179 [249 P. 46]), the city council's decision to place future employees under a different pension system must be upheld unless expressly prohibited by the city charter. In *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894], the court discussed at length the power over municipal affairs which a city possesses under a home rule charter and stated: ''A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not expressly stated in the charter is clearly indicated. So guided, reason dictates that the full exercise of the power is permitted except as clearly and explicitly curtailed. Thus in construing the city's charter a restriction on the exercise of municipal power may not be implied.'' (P. 599.)

In the instant case, it appears to us that language in the charter which merely provides that a particular pension fund shall be created and maintained cannot be deemed to constitute a limitation of the council's power to place future employees under another pension system. Since the city council's action in adopting Ordinance No. 63 N.S. and in entering into the amended contract with the Board of Administration of the State Employees' Retirement System affected only

those individuals who were yet to be hired by the city and who were accordingly neither members of the police or fire department nor of the Police and Firemen's Pension Fund, it is apparent that the city's action in no way interfered with the maintenance of that fund for the benefit of those employees who had previously become members. Under such circumstances, the city's action cannot be deemed violative of any limitation or restriction contained in the charter. ██ There is similarly no merit in plaintiffs' contention that the continued enrollment of new members is necessary to the financial stability of the Police and Firemen's Pension Fund and that, in the absence of same, a greater obligation will be placed upon those persons who remain contributing members of the fund. Section 15 of article XI of the charter places a limit on the amount which may be deducted from the salary of any employee belonging to the fund. Although the charter doubtless requires the city to ''maintain'' the Police and Firemen's Pension Fund for the benefit of the active and retired members thereof, it does not follow that this obligation may be fulfilled only by continually enrolling new members in a pension fund which had already incurred an unfunded liability of 13½ million dollars as of January 1, 1963.

██ Plaintiffs next contend that defendant city violated an express requirement of article XI of the charter by failing at all times subsequent to October 1, 1964, to take hazardous duty pay into consideration when determining the deductions and contributions to be made on behalf of active members of the Police and Firemen's Pension Fund and the benefits to be paid retired members of said fund. Plaintiffs deny that this administrative practice was legalized by the belated amendment to Ordinance No. 1608 and assert that such amendment constituted an invalid attempt to amend the charter, by redefining ''salary'' and ''payroll'' without obtaining the approval of the electorate. We agree.

In our opinion, sections 13 and 15 of article XI of the charter indicate an intent that the city and the aggregate members of the police and fire departments who belong to the Police and Firemen's Pension Fund contribute equal semimonthly amounts to said fund. Section 13 requires each individual employee to contribute 3 percent of his ''salary'' and the city to contribute 3 percent of the total ''payroll'' of the police and fire departments. Section 15 authorizes the pension board to make demands for additional pay-

ments not to exceed 10 percent of the total annual payroll "upon the City Council, and equally upon the officers and members of the police and fire departments."[2] Since "payroll" is thus treated as synonomous with the total "salaries" paid to employees belonging to the fund, it is obvious that the term "salary," as used in article XI of the charter, designates the total compensation or rate of pay which a policeman or fireman receives in return for services which he renders the city in the course of his employment.

The uncontradicted evidence produced at the trial, which is entirely in accord with the express wording of the hazardous duty pay ordinance, shows that such compensation has at all times subsequent to October 1, 1964, been paid to all "sworn personnel" of the police and fire departments who complete one tour of duty per month, without regard for the fact that they encounter no "hazardous" conditions in the course of their employment and are, in certain instances, permanent desk employees. It is apparent that monthly payments of this nature constitute a blanket increase in the "payroll" of the police and fire departments and in the "salaries" of the personnel affected and that the city council could not obviate this fact merely by designating such payments as "hazardous duty pay" and by enacting an ordinance purporting to remove such pay from the scope of article XI of the city charter.

In *Adams* v. *Wolff* (1948) 84 Cal.App.2d 435 [190 P.2d 665], a city and county charter provision required that the rate of pay of certain groups and crafts engaged in city and county service be fixed at the rate of pay generally prevailing for such groups and crafts in private employment in San Francisco pursuant to collective bargaining agreements. The city and county contended that its duty to fix the "rate of pay" related only to the "basic" rate of pay and that such pay did not include premium pay for holidays and night work, which related to "working conditions." The court in rejecting this contention stated: "It is probably true that section 151.3 [of the charter] relates only to the 'basic' rate of pay and does not relate to 'working conditions.' But that in no way assists defendants. It is quite apparent that it was the intent of section 151.3 to give to the public employees of the type here involved the same take home pay received by

---

[2]At the time of trial, the city and the aggregate members of the police and fire departments, exclusive of those hired subsequent to October 16, 1964, were required to contribute 8 percent of "salary" and "payroll," respectively.

private employees in the same industry. . . . It is quite obvious that night shift pay and pay for holidays is a part of the 'basic' rate of pay, and is as much a part of the wage structure as the hourly wage itself." (Pp. 444-445.)

It is equally obvious that the hazardous duty pay authorized by Ordinance No. 67 N.S. must be deemed a part of the "payroll" of the police and fire departments and of the "salaries" of the members of said departments and that such pay should have been treated as such by defendants for the purpose of making pension deductions from the salaries of members of the Police and Firemen's Pension Fund, contributing an equal amount to such fund on their behalf and paying increased pensions to retired members of said fund.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment in accordance with the views expressed herein.

Agee, J., and Taylor, J., concurred.

The petitions of the appellants and the respondents for a hearing by the Supreme Court were denied May 10, 1967. Peters, J., was of the opinion that the petition should be granted.