[Civ. No. 30052. First Dist., Div. Two. Nov. 30, 1972.]

WAYNE R. WHITMIRE et al.,
Plaintiffs, Cross-defendants and Appellants, v.
CITY OF EUREKA, Defendant, Cross-complainant and Respondent.

**COUNSEL**

Robert W. Hill for Plaintiffs, Cross-defendants and Appellants.

Melvin S. Johnsen, City Attorney, for Defendant, Cross-complainant and Respondent.

## Opinion

**KANE, J.**—This case is yet another installment in the herky-jerky development of a viable comprehensive retirement system for firemen and policemen employed by the City of Eureka.

*Historical Background*

In order to isolate and explain our resolution of the fundamental issue here involved it is necessary to briefly outline the legislative and judicial history pertaining to the Firemen's and Policemen's Retirement Fund System of the City of Eureka ("System").

The System was first established in 1943 by Ordinance No. 2262 enacted by the voters of the city. Under the provisions of this ordinance, a commission ("Commission") consisting of the president of the city council, the city treasurer, the chief engineer of the fire department, the chief of the police department, and one member elected from each of the departments, i.e., police and fire, was created "for the purpose of supervising the funds" and was charged with the duty of providing "for the collection and disbursement of the Fund and to designate the Beneficiaries thereof, as hereinafter provided, and to establish rules and regulations not inconsistent therewith."

Section 16 of the ordinance, which is pertinent in this appeal, provided as follows: "This Ordinance, in order to effect improvements and efficiently carry into effect the purposes hereof and supply provisions hereof that may not be herein contained to cause the purposes to be carried into effect, may be amended in the following manner, to wit:

"That any proposed improvement or amendment shall be voted upon by secret ballot in the Fire Department and Police Department, separately, and the results thereof certified to the City Council. That in the event such proposed amendment shall have passed by a majority vote by each said Fire and Police Department, then if the Council, by a majority vote, shall pass such proposed amendment, the same shall become effective and binding."[1]

In 1960, pursuant to a request from the Commission, the city engaged the services of professional actuaries to conduct an investigation and evaluation of the retirement fund. The result of this survey showed that as of March 31, 1960 the System had an unfunded liability of $1,241,395.

A second actuarial study estimated the unfunded liability to be $2,742,-

---

[1]Although the language of this section was amended when codified in 1963 as section 2-5.417 of the Eureka Municipal Code, appellants concede that the "differences in language do not vary express purposes of this section."

899 as of October 31, 1964. This prompted the city council to establish a "Citizens Committee to Study the Firemen's and Policemen's Retirement Fund System." In its report dated August 11, 1965 the committee expressed its opinion and recommendations as follows: "It is the unanimous opinion of the Committee that the present Firemen's and Policemen's Retirement Fund System is economically unsound. Continuation of the plan will lead to financial disaster.

"It is the unanimous recommendation of the Committee that the Council immediately take all necessary steps to cause the repeal of the present plan and thereafter to institute a substitute plan, either the plan offered by the State Retirement Fund System or a private insurance plan.

"The Committee has been advised that the vested rights of Eureka's firemen and policemen in the present plan will not be affected by the abolishment of the plan. The purpose of a new plan would be to meet the financial threat to the City created by the hiring of firemen and policemen in the future."

Following receipt of the citizens' committee report, a special referendum election for January 18, 1966 was called on the proposition to repeal Ordinance No. 2262 as to new employees only. The proposed repeal was defeated.

The next significant developments were two court decisions—*Estes* v. *City of Richmond* (1967) 249 Cal.App.2d 538 [57 Cal.Rptr. 536], and *Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336 [71 Cal.Rptr. 135, 444 P.2d 711].

*Estes* upheld the validity of a city ordinance placing *future* firemen and policemen under the state retirement system rather than under the system established by the city charter.

In *Bellus* the Supreme Court concluded that payment of retirement benefits is a general obligation of the city and is not limited to matching the contributions of members of the fund.

In November 1968, a third actuarial study was authorized by the city council. The report covering this study estimated the unfunded liability as of June 30, 1968 to be $3,373,841.

Following receipt of this report the city adopted the two ordinances which are the subjects of this action and cross-action for declaratory relief.

Appellants Whitmire, a member of the city's police department, and Figas, a member of the city's fire department, filed this action challenging the validity of Ordinance 135-C.S. adopted November 19, 1969, which, among other things, restructured the composition of the Commission.

Respondent city cross-complained for declaratory relief seeking a judicial determination that Ordinances 135-C.S. and 128-C.S.[2] are valid, constitutional legislative enactments and that the city has the unrestricted power and authority to amend and modify the provisions of Ordinance No. 2262.

In the court below each side moved for summary judgment. The trial court, after denying the motion of appellants and granting the city's motion, entered a judgment dismissing appellants' action and decreed the relief sought by the city in its cross-complaint.[3]

### Delegation of Legislative Power

The crucial issue here involves consideration of the doctrine prohibiting delegation of legislative power.

The issue is framed, on one side, by appellants' argument that section 16 of Ordinance No. 2262 is the exclusive means by which amendments to the ordinance may be enacted and, on the other side, by the city's contention that unless construed as a permissive alternative procedure for amending the ordinance, section 16 is invalid and unconstitutional as an unlawful delegation of legislative power to private individuals.

For the reasons which follow, we find the city's position to be unassailable and accordingly affirm the court below.

The application in California of the doctrine prohibiting delegation of legislative power was reviewed in detail by the Supreme Court in *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, at pages 375-377 [71 Cal.Rptr. 687, 445 P.2d 303]. The court noted at the outset that the doctrine is well established in California, and that it precludes delegation of the legislative power of a city (at p. 375). The court explained that the purpose behind the doctrine is that " 'truly fundamental issues' " should be resolved by the legislative body, and that any grant of authority must be accompanied by " 'safeguards adequate to prevent its abuse' " (at p. 376). Lacking the required safeguards, such a grant of authority is an unconstitutional delegation of legislative power.

As the city points out, none of the recognized exceptions or limita-

---

[2] Ordinance 128-C.S., adopted July 25, 1967, provides that firemen and policemen hired after its effective date are excluded from membership in the retirement system.

[3] In their notice of appeal, appellants purport to appeal from "the judgment denying plaintiffs and cross-defendant's Motion for Summary Judgment."

No such judgment was—nor could one be—entered since an order denying a motion for summary judgment is nonappealable (4 Witkin, Cal. Procedure (2d ed. 1971) p. 2842). The ruling, of course, is reviewable on appeal from the ultimate judgment.

tions to the application of the doctrine as set forth by the Supreme Court in *Kugler* are evident in section 16. Section 16 does not limit itself to a delegation of power to determine a fact or state of facts upon which the operation of the ordinance depends; rather, it delegates to a small number of private persons in the employ of the city the *original control* of the enactment of laws relating to the administration of the fiscal affairs of the city and provision for maintenance of its fire and police departments and to payment of compensation for services. In effect, if section 16 is interpreted as the *exclusive* procedure for amending the System, any proposed action by the city council regarding the retirement fund is subject to *approval or veto* by the two departments' members. Since the power to approve or veto actions of a legislative body is, of course, part of the legislative process, this grant of authority must be accompanied by " 'safeguards adequate to prevent its abuse' " (*Kugler* v. *Yocum, supra,* at p. 376). None exist under appellants' "exclusive remedy" interpretation, and therefore this section must be declared an unconstitutional delegation of legislative power if interpreted in that manner.

In addition, section 20 of Ordinance No. 2262 appears to negate appellants' argument. That section provides that the provisions of the ordinance shall be interpreted in conformity with the charter; and, in the event of conflict, the charter prevails. Under section 300 of the charter, the legislative power of the city is vested in the city council, subject to some exceptions not applicable here. If section 16 is interpreted as giving private individuals (members of the fire and police departments) an ultimate right to veto or approve city council actions regarding the retirement system, it would remove from the council some of its vested legislative power under the charter. Section 16, utilizing appellants' interpretation, would therefore be in conflict with the city charter and, as we have pointed out, under section 20 of the ordinance, the charter must prevail. Since the complete legislative power of the city is vested in the council by the charter, it becomes apparent that appellants' contention cannot stand.

The logic behind this conclusion is evident in light of the situation presently before us. As a result of the decision in *Bellus* v. *City of Eureka, supra,* it has been determined that Ordinance No. 2262 created a general tax liability of the City of Eureka and that consequently, any deficit in the fund must be made up from general tax revenue. Upon receiving the June 30, 1968, actuarial report which estimated the unfunded liability to be over three and a quarter million dollars, the city council recognized even more strongly that it had the responsibility to take steps whereby the taxpayers of the city could be relieved from the ever-increasing financial burden resulting from the retirement fund liability. In order to accomplish this objec-

tive while still protecting the vested rights of those individuals already within the retirement system, the council enacted the two ordinances in question without first submitting them to vote by the respective members of the fire and police departments.

It is patently obvious that appellants' contention, if valid, would amount to a clear grant of veto power to the members of the two interested departments. This, in the words of the court in *Kugler,* would be a "total abdication" of the council's vested legislative power and therefore unconstitutional.

■  Appellants' contention that the vested rights of members of the System have been tampered with through the enactment of these two ordinances is also invalid. As the city points out, an examination of Ordinances 128-C.S. and 135-C.S. discloses that only administrative and procedural changes are involved. Future employees do not have a vested right in any particular pension plan *(Estes* v. *City of Richmond, supra,* pp. 544-545). And, although active and retired members have a vested right to a pension, they do not have a vested right to control the administration of the plan which provides for the payment of pensions. This is especially true under a plan, such as Eureka's, which is a general obligation of the city.

In light of the foregoing discussion, we uphold the trial court's determination that Ordinances Nos. 128-C.S. and 135-C.S. are valid legislative enactments and that the Council of the City of Eureka has the unrestricted power to amend and modify Ordinance No. 2262 with respect to any matter which does not affect the substantive vested rights of those who are receiving or entitled to receive benefits under the Firemen's and Policemen's Retirement System of the City of Eureka at the time of any such amendment or modification.

The purported appeal from the judgment (order) denying motion for summary judgment is dismissed. The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.