Opinion
 

 WIENER, J.
 

 Article IX of the San Diego City Charter provides for the creation of a retirement system (System) for city employees to be managed by a board of administration (Board). (San Diego City Charter, art. IX, §§ 141-148.1.) The city council, pursuant to its power under section 146 of the charter, has enacted through the years a series of
 
 *36
 
 ordinances affecting the System which are now contained in the San Diego City Municipal Code. (San Diego Mun. Code, § 24.0100 et seq.)
 

 The sole issue in this appeal is whether the city was authorized to pass Ordinance No. 12132 (new series) establishing nine members of the thirteen-member Board as a quorum and requiring a majority vote of the entire Board for final action on any Board decision except a vote to adjourn.
 
 [1]
 
 We conclude the trial court properly found the ordinance to be a lawful enactment and affirm the order denying plaintiffs, as members of the Board, their requested preliminary injunctive relief.
 

 The cause of this litigation is the direct conflict between the ordinance passed by the city and the quorum requirement established by the Board itself. Rule 10 of the Board provides for a quorum of a majority, or seven, of its members and an affirmative vote of a majority of those present as necessary for the passage of any business. Plaintiffs contend the city council is not authorized by the charter to enact an ordinance establishing quorum requirements for the Board and, consequently, their action resulted in an amendment to the city charter in violation of article XI, section 3 of the California Constitution.
 
 [2]
 
 The resolution of this issue turns on the proper construction of the relevant charter provisions.
 

 
 *37
 
 Section 141, the enabling clause of article IX, authorizes the city council to establish a retirement system by ordinance. Section 144 mandates the creation of a managerial body for the System and enumerates its authority, composition and function. The section provides in pertinent part:
 

 “The system shall be managed by a Board of Administration which is hereby created, consisting of the City Manager, City Auditor and Comptroller, the City Treasurer, three members of the Retirement System to be elected by the active membership, one retired member of the retirement system to be elected by the retired membership, an officer of a local bank, and three other citizens of the City, the latter four to be appointed by the Council....
 

 “The Board of Administration may establish such rules and regulations as it may deem proper ....
 

 “The Board of Administration shall be the sole authority and judge under such general ordinances as may be adopted by the Council as to the conditions under which persons may be admitted to benefits of any sort under the retirement system; and shall have exclusive control of the administration and investment of such fund or funds as may be established; . . .” Section 146 of the charter authorizes the city council: “. . . to enact any and all ordinances necessary, in addition to the ordinance authorized in Section 141 of this Article, to carry into effect the provisions of this Article; and any and all ordinances so enacted shall have equal force and effect with this Article and shall be construed to be a part hereof as fully as if drawn herein.”
 

 San Diego is a charter city. It can make and enforce all ordinances and regulations regarding municipal affairs subject only to the restrictions and limitations imposed by the city charter, as well as conflicting provisions in the United States and California Constitutions and preemptive state law. Consequently, “ ‘[wjithin its scope, such a charter is to a city what the state Constitution is to the state.’ ”
 
 (San Francisco Fire Fighters
 
 v.
 
 City and County of San Francisco
 
 (1977) 68 Cal.App.3d 896, 898-899 [137 Cal.Rptr. 607].) “Article XI, section 5, subdivision (b) of the California Constitution [gives] full power to charter cities to provide for the compensation of their employees. It "is clear that provisions for pensions relate to compensation and are municipal affairs within the meaning of the Constitution.”
 
 (City of Downey
 
 v.
 
 Board of Administration
 
 (1975) 47 Cal.App.3d 621, 629 [121 Cal.Rptr. 295].)
 

 
 *38
 
 A city council’s decision regarding a pension system must be upheld unless expressly prohibited by the city charter.
 
 (Estes
 
 v.
 
 City of Richmond
 
 (1967) 249 Cal.App.2d 538, 545 [57 Cal.Rptr. 536].) “The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; and the enumeration of powers does not constitute an exclusion or limitation. [Citations.]. . . All rules of statutory construction as applied to charter provisions [citations] are subordinate to this controlling principle. ... A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not expressly stated in the charter is clearly indicated. . . . Thus in construing the city’s charter a restriction on the exercise of municipal power may not be implied.”
 
 (City of Grass Valley
 
 v.
 
 Walkinshaw
 
 (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894].)
 

 In approaching our task of interpretation, we are further guided by the following principles of statutory construction specifically relating to charter pension provisions: “Although the legislative intent, as evidenced by the provisions of the law, and judicial construction thereof, is controlling, pension laws, being remedial in nature, should be liberally construed in favor of the persons intended to be benefited thereby. However, a strained and unreasonable construction should not be adopted, and it should be remembered that the construction should protect both the municipality and the employee.” [Fns. omitted.] (McQuillin, Municipal Corporations (3d ed. 1973) § 12.143, p. 600.) Ambiguity and uncertainty in pension legislation requires a construction that will, if reasonably possible, accomplish the purpose of the legislation.
 
 (Terry
 
 v.
 
 City of Berkeley
 
 (1953) 41 Cal.2d 698, 701-702 [263 P.2d 833];
 
 Newhouser
 
 v.
 
 Board of Trustees
 
 (1971) 15 Cal.App.3d 322, 327 [93 Cal.Rptr. 166].)
 

 The statutory scheme under scrutiny provides for the establishment of a retirement system for compensated city officers and employees by the city council through ordinance. However, the charter directs that a Board of Administration shall be created to manage the system. The Board, as the managing entity, is authorized by section 144 to “establish such rules and regulations as it may deem proper . . .” and to “be the sole authority and judge under such general ordinances as may be adopted by the Council as to the conditions under which persons may be admitted to benefits of any sort under the retirement system . . . .” In other words, the Board, vested with the management of the retirement system, is authorized by the charter to make such rules and regulations as
 
 *39
 
 it deems proper for the administration of the system. (See also San Diego Mun. Code, § 24.0901.) The charter further provides that the Board shall be the sole authority and judge, under such general ordinances as may be adopted by the council, to determine when members may be admitted to and continue to receive benefits of any sort under the System. (See
 
 Lyons
 
 v.
 
 Hoover
 
 (1953) 41 Cal.2d 145, 148 [258 P.2d 4]; San Diego Mun. Code, § 24.0901; 38 Cal.Jur.2d, Pensions. § 32, p. 353.) Thus, while it is the function of the Board to act upon individual cases, the city council has been conferred the authority to control the Board’s activities by “general ordinances.” (See
 
 Lyons
 
 v.
 
 Hoover, supra,
 
 at p. 148; 38 Cal.Jur.2d,
 
 op. cit. supra,
 
 at p. 353.)
 

 This latter determination of the city council’s role is supported by the presence of section 146 within the charter empowering the council “to enact any and all ordinances necessary, in addition to the ordinance authorized in section 141 of this Article, to carry into effect the provisions of this Article . . . .” In
 
 Montgomery
 
 v.
 
 Board of Admin., etc.
 
 (1939) 34 Cal.App.2d 514, 521 [93 P.2d 1046, 94 P.2d 610], this court held section 146 to be constitutional, explaining that “the section gives the city council power to pass ordinances to administer and carry out the terms of the charter. It gives no authority [however] to pass any enactment that conflicts with the charter provisions.”
 

 Although the quorum requirement in controversy could be easily branded as a mere procedural housekeeping provision and hence an administrative rule which could be enacted only by the Board under its rule-making authority in section 144, it cannot be so characterized without disregarding the substantive impact of a quorum requirement and without violating the intent of the charter provisions, especially relating to the make-up of the Board. “The requirement of a quorum is a protection against totally unrepresentative action in the name of the body by an unduly small number of persons.” (Robert’s Rules of Order (rev. ed. 1970) p. 16.) The charter mandates not only the creation of the Board, but more importantly, its composition (see § 144,
 
 supra).
 
 The evident purpose of this latter provision is to secure a board as objective, fair and competent as possible through the representation of all those interests necessarily involved within a public service retirement system. Accordingly, a quorum requirement like rule 10 enacted by the Board providing for a quorum of a majority, or seven, of its members and an affirmative vote of a majority of
 
 those
 
 present (possibly four within a minimum quorum) as necessary for the passage of any business matter would be contrary to the charter. For, accompanying the cited purpose of the
 
 *40
 
 composition provision is the necessarily implied intent to have this “representative” Board benefited by the perspectives, opinions and values of its varied membership and thus their vote representative of such diverse interests. Hypothetically, the possibility exists that the whim of four members of the thirteen-member Board could be determinative of any business matter and, taken to its extreme, plaintiffs’ argument would permit the Board to establish a one-member quorum. Clearly, such possibilities are in conflict with the intent and purpose of section 144 of the charter and, indeed, present us with a denial of true majority representation.
 

 On the other hand, the city council’s enactment of the quorum of nine members and an affirmative vote of a majority of the entire Board (seven members) as necessary to pass any vote and take final action on any decision except an adjournment vote, is fully consistent with the charter pension provisions. This quorum requirement not only insures the participation of more than the majority of the Board, but, of greater significance, guarantees that Board decisions shall be representative of the majority of the entire Board regardless of the number of members present considering and voting on a particular matter. It is further representative of the other quorum requirements contained in the charter. (See §§ 15,
 
 [3]
 
 146,
 
 supra.)
 
 Finally, in light of the nature of the city council’s more stringent quorum requirement which effectuates the intent behind charter section 144, the city council’s enactment of the ordinance is authorized by the express language of charter section 146.
 

 Plaintiffs further assert “that once the benefits are established by the City Council in accordance with Section 141, their legislative role, as it pertains to the pension system, ceases.” This assertion is without merit in light of the presence of section 146 empowering the council “to enact any and all ordinances necessary,
 
 in addition to the ordinance authorized in Section 141 of this Article,
 
 to carry into effect the provisions of this Article . . . .” (Italics added.) Section 146 does not contain the asserted
 
 *41
 
 limitation as there is no basis to imply a time limit on the city council’s role as overseer to assure performance of the charter pension provisions.
 
 [4]
 

 The order is affirmed.
 

 Brown (Gerald), P. J., and Staniforth, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied August 15, 1979.
 

 [1]
 

 The city council enacted Ordinance No. 12132 (new series) which was codified as section 24.0109.1 of the San Diego Municipal Code and became effective on September 23, 1977. It provides: “Nine (9) of the members elected and appointed to the Board pursuant to Section 144 of the Charter shall constitute a quorum to do business or conduct a hearing but a lesser number may take action to adjourn a meeting or hearing from time to time. The affirmative vote of a majority of the members elected and appointed to the Board shall be necessary to pass any vote and take final action on any decision before the Board except that a vote to adjourn may be adopted by a majority of the members present.”
 

 [2]
 

 Article XI, section 3 of the California Constitution provides: “(a) For its own government, a county or city may adopt a charter by majority vote of its electors voting on the question. The charter is effective when filed with the Secretary of State. A charter may be amended, revised, or repealed in the same manner. A charter, amendment, revision, or repeal thereof shall be published in the official state statutes. County charters adopted pursuant to this section shall supersede any existing charter and all laws inconsistent therewith. The provisions of a charter are the law of the State and have the force and effect of legislative enactments. “(b) The governing body or charter commission of a county or city may propose a charter or revision. Amendment or repeal may be proposed by initiative or by the governing body. “(c) An election to determine whether to draft or revise a charter and elect a charter commission may be required by initiative or by the governing body. “(d) If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail.”
 

 [3]
 

 Charter section 15 provides: “A majority of the members elected to the Council shall constitute a quorum to do business, but a less number may adjourn from time to time and compel the attendance of absent members in such manner and under such penalties as may be prescribed by ordinance. Except as otherwise provided herein the affirmative vote of a majority of the members elected to the Council shall be necessary to adopt any ordinance, resolution, order or vote; except that a vote to adjourn, or regarding the attendance of absent members, may be adopted by a majority of the members present. No member shall be excused from voting except on matters involving the consideration of his own official conduct or in which his own personal interests are involved.”
 

 [4]
 

 Plaintiffs also urge charter section 143.1 is in direct conflict with Ordinance No. 12132 rendering the latter null and void. Section 143.1 provides: “No ordinance amending the retirement system which affects the benefits of any employee under such retirement system shall be adopted without the approval of a majority vote of the members of said system.” We reject this contention as the ordinance in question does not affect in any manner either the substantive benefits or the vested rights of any member of the retirement system.