No. 19,659.

POLICE PENSION AND RELIEF BOARD OF THE CITY AND COUNTY OF DENVER, ET AL. *v.* LAWRENCE BILLS, ET AL.
(366 P. [2d] 581)

Decided November 20, 1961.   Rehearing denied December 11, 1961.

Mr. DONALD E. KELLEY, Mr. HORACE N. HAWKINS, JR., for plaintiffs in error.

Messrs. WILLIAMS, ERICKSON & BROWN, for defendants in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

THE present controversy involves a determination of the legal effect of an amendment to the charter of the City and County of Denver pertaining to the retirement of policemen and approved by a majority vote at a special election held on March 20, 1956.

Prior to June 1, 1947, the retirement of police officers of Denver was governed by ordinance. However, on May 20, 1947, the people of Denver approved an amendment

to the city's charter which incorporated therein a comprehensive plan covering the retirement of policemen from the active force. This charter amendment, which became effective on June 1, 1947, provided for the following, inter alia: (1) created a "Police Pension and Relief Board" and charged it with the responsibility of granting the pensions provided for by the amendment; (2) created a "Police Pension and Relief Fund" out of which the pensions or retirement benefits were to be paid; (3) required every member of the police department to contribute $3\frac{1}{2}\%$ of his salary to such fund; (4) authorized any member of the police department upon completion of twenty-five years of active service in the department to retire from further active service; (5) authorized payment of a pension from the fund to any such retired member, said pension to be in equal monthly installments and equal to one-half $(\frac{1}{2})$ of the average monthly rate of salary which such member had received during the one year immediately preceding the date of termination of his active service; (6) and included a so-called "escalator clause" which was as follows:

"In the event that salaries in the Denver Police Department shall be raised after the effective date of this amendment those members of said department who shall have previously been retired from active service and who are receiving a pension shall be entitled to an increase in the amount of their pension equal to one-half of the raise in pay granted in the rank said member held at the time he was retired."

On March 20, 1956, the people of Denver by another amendment to their charter, which became effective on April 1, 1956, raised the salaries of all active members of the police department and at the same time purportedly altered the retirement program for policemen theretofore adopted in 1947 in the following particulars: (1) declared that for the purpose of computing the number of years of "active service" in the department, service in the armed forces should be deemed and considered "active

service"; (2) decreed that members of the police department who had retired prior to the effective date of this amendment (April 1, 1956) should not be entitled to any increase in their pension because of the increase in pay granted by said amendment; and (3) purported to "repeal and delete" from the charter the "escalator clause" adopted in 1947 and set forth in its entirety above.

Thereafter, on June 3, 1958, the qualified electors of Denver approved another amendment to the charter which provided, among other things, for a raise in salary for all members of the police department, effective July 1, 1958.

On March 14, 1960, the present action was instituted by thirteen former members of the Denver police department, each of whom had retired from the force subsequent to April 1, 1956, and prior to July 1, 1958, against the Police Pension and Relief Board, the City and County of Denver, and its Auditor, Thomas Currigan. Each of these thirteen retired policemen generally sought to have a determination as to his individual rights and status under the retirement program and in particular each sought a declaration that he was entitled to an increase in his individual pension equal to one-half of the raise in pay granted by the 1958 charter amendment.

These thirteen retired policemen can be classified as follows:

Group 1. Consists of plaintiffs Countryman, Johannsen, Lawless, Lyreman, and Nevin, who had completed 25 years of active service in the department prior to April 1, 1956, but had not retired and voluntarily remained in active service.

Group 2: Consists of Eastis, Moon, Scott and Swank, who had also completed 25 years of service in the department as of April 1, 1956, but only because of the provision in the 1956 amendment which permitted service in the armed forces to be deemed as active service in the police department.

Group 3. Consists of Bills, Cottrell, Moore and Staab,

all of whom as of April 1, 1956, had completed more than 24 years of active service in the police department but none of whom had completed 25 years of such service. Specifically as of April 1, 1956, Bills had completed 24 years, 10 months and 23 days of active service; Cottrell and Moore had completed 24 years, 10 months and 20 days of active service; and Staab 24 years and 4 months.

Upon trial it was the basic contention of the defendants that none of the thirteen plaintiffs was entitled to any increase in his pension by virtue of the raise in pay granted the active members of the police department by the 1958 charter amendment, because the so-called "escalator clause" adopted in 1947 by charter amendment had been expressly repealed by the charter amendment adopted in 1956. The plaintiffs in turn contended that the 1956 charter amendment did not apply nor in any manner affect their pension rights; that prior to 1956 their pension rights had ripened into a vested contractual obligation, or, if there had not been a complete vesting, then at the very least there was a limited vesting to the end that there could not thereafter be a unilateral, adverse change in their pension plan.

Upon conclusion of the trial the court made no detailed nor written declaration of the rights of these plaintiffs, but verbally commented that all were entitled to an increase in their pension equal to one-half of the raise in pay authorized by the 1958 amendment and pointedly closed with the observation that to hold to the contrary would "beat" these plaintiffs out of something that was rightfully theirs. Judgment was entered for the plaintiffs against all defendants for $15,876.00, this sum representing the aggregate of the increased pensions claimed by the plaintiffs up to August 31, 1960. By writ of error the defendants seek reversal of this judgment.

The ultimate question to be resolved is whether under the circumstances the 1956 charter amendment, which, inter alia, purported to repeal and delete from the city charter the so-called "escalator clause" adopted

in 1957, is applicable to these thirteen individual plaintiffs. We conclude that this attempted "repeal" of the "escalator clause" by the 1956 amendment is inapplicable to these plaintiffs.

Historically, pensions to retired government employees have long been viewed as a mere gratuity from a benevolent sovereign, and this has been true even though the employee had himself contributed to the particular pension fund. Being a gift only, the pensioner acquired no right to a continuance thereof, and the pension plan and the payments made thereunder were always subject to unilateral change of an adverse nature or could even be abolished in toto by those who as of a particular moment were in authority. For many years the foregoing represented the thinking and philosophy of this Court. See *People ex rel. Albright v. Board of Trustees,* 103 Colo. 1, 82 P. (2d) 765; *Bedford v. White,* 106 Colo. 439, 106 P. (2d) 469; and *Board of Trustees v. People ex rel. Behrman,* 119 Colo. 301, 203 P. (2d) 490.

However, for the past twenty-five years there has been an ever growing school of judicial thought which holds that a person who enters into governmental employment where a retirement plan is in effect, thereby acquires a *limited* vesting of his pension rights while still in active employment and a *vested* pension right upon retirement. The same result obtains where during his active governmental employment a particular pension plan is placed in effect, the theory being that such is a material inducement to the employees to remain in the employment of the government. See, for example, *Retirement Board of Allegheny County v. McGovern,* 316 Pa. 161, 174 A. 400; *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A. (2d) 231; and *Hickey v. Pension Board of City of Pittsburgh,* 378 Pa. 300, 106 A. (2d) 233.

In *Police Pension and Relief Board of the City and County of Denver v. McPhail,* 139 Colo. 330, 338 P. (2d) 694, this "contract principle" was recognized and

approved and it was held that when a member of the Denver police department retires from active service his retirement rights thereupon become a vested contractual obligation, not subject to a unilateral change of any type whatsoever. Accordingly, that portion of the 1956 charter amendment which in so many words purports to deny to those who had *already* retired from the police department the increase in pension which would otherwise result from the increase in pay granted by another provision of this same 1956 charter amendment was held unconstitutional, being in violation of Article II, section 11 of the Colorado Constitution in that it impaired the obligation of a contract.

Both plaintiffs and defendants rely on the McPhail case as supporting their respective positions in the instant case. The factual situation in the McPhail case was that of former members of the police department who had *already* retired prior to the effective date of the 1956 charter amendment, which was April 1, 1956. Here, we are confronted with the pleas of: (1) those who as of April 1, 1956, were *eligible* to retire but had not actually retired; (2) those who as of that same date were not eligible to retire, but who nevertheless had more than 24 years of active service; and (3) those who by virtue of a provision in the 1956 charter amendment were allowed to include their service in the armed forces in computing their service in the police department and by this method of computation had therefore completed 25 years of service. The McPhail case in our view neither upholds nor rejects the position of either plaintiffs or defendants, though we believe the rationale thereof supports the position of these thirteen plaintiffs.

■ Those plaintiffs who prior to April 1, 1956 were eligible to retire, even though they elected not to retire, are clearly unaffected by the attempted repeal of the escalator clause. In the McPhail case we approved the following language used by the Pennsylvania Supreme Court in the McGovern case: "... *until an employee has*

*earned his retirement pay,* or until the time arrives when he may retire, *his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right* of which the person entitled thereto cannot be deprived; it has ripened into a full contractual obligation." (Emphasis supplied.) Subsequent to the McGovern case the same court in *McBride v. Retirement Board,* 330 Pa. 402, 199 A. 130, said: "We endeavored to hold in the McGovern case that eligibility for retirement pay is complete as soon as the employee or member of the retirement system has satisfied the conditions requisite for retirement, *whether the employee chooses to retire immediately or to continue in active service. His rights to such pay are fixed as of the time he attained eligibility."* (Emphasis supplied.)

■ All remaining plaintiffs were eligible to retire (1) either on April 1, 1956, if aided by the 1956 charter amendment which permitted military service to be counted as active service in the police department; or (2) if a non-veteran, prior to July 1, 1958. All did in fact retire before July 1, 1958. We now hold that not only prior to their actual retirement, but also prior even to their eligibility to retire, there was a limited vesting in these plaintiffs of their pension rights to the end that although prior to their eligibility to retire the pension plan could be changed, it could not be abolished nor could there be a substantial change of an adverse nature, without a corresponding change of a beneficial nature. An employee's pension rights prior to his eligibility to retire may be modified for the purpose of keeping the pension system flexible to permit adjustments in accord with changing conditions if at the same time the basic integrity of the plan is still maintained. Hence, prior to eligibility for retirement, changes may properly be made in a pension plan if these changes strengthen or better it, or if they are actuarially necessary. These particular plaintiffs had every right to expect that upon retirement

their pension would reflect subsequent increases in pay granted to those in active service. The charter amendment with which we are here concerned constituted an adverse change in the overall pension plan which deprived plaintiffs of a very substantial right, was unaccompanied by a corresponding change of a beneficial nature, was not shown to be actuarially necessary, nor that it in anywise strengthened or bettered the pension plan. See *Allen v. City of Long Beach*, 45 Cal. (2d) 128, 287 P. (2d) 765; *Abbott v. City of Los Angeles*, 50 Cal. (2d) 438, 326 P. (2) 484; and *Harvey v. Retirement Board of Allegheny County*, 392 Pa. 421, 141 A. (2d) 197 and 52 A.L.R. (2d) 430.

In conclusion, laying aside all legal niceties, it would appear to be grossly unfair and inequitable to take from the plaintiff Bills, for example, his right to have his pension reflect the subsequent raise in pay granted active members of the department, a right conferred on him by the 1947 charter amendment, he having thereafter, on the strength of this solemn promise, contributed to the pension fund $3\frac{1}{2}\%$ of his salary for many years, and as of April 1, 1956, the effective date of the purported "repeal" of the escalator clause, had completed 24 years, 10 months and 23 days of active service in the police department and was therefore only 38 days away from the date when he would complete his 25 years of service and be eligible to retire. In considering a similar situation, the Pennsylvania Supreme Court in *Hickey v. Pittsburgh Pension Board,* supra, very appropriately said:

"But when Thomas Hickey started contributing to the city pension fund in 1915, there appeared on the horizon not the slightest suggestion of a cloud to imperil the pension toward which he was faithfully to plod for 31 years. It is not reasonable or logical to suppose that, given the liberal attitude that the General Assembly has assumed in this field of legislation, that it would impose restrictions so fundamentally contrary not only to its policy but to the elemental rules of fairness.

*Whether it be in the field of sports or in the halls of the legislature it is not consonant with American traditions of fairness and justice to change the ground rules in the middle of the game.*" (Emphasis supplied.)

For these reasons we hold that the provision of the 1956 charter amendment which repealed the "escalator clause" theretofore adopted in 1947 is ineffective and inapplicable to these plaintiffs and that the trial court was correct in entering a money judgment for the plaintiffs in the amounts prayed for.

Judgment affirmed.

Mr. Justice Pringle not participating.