[Civ. No. 15236. Third Dist. Sept. 30, 1976.]

DONALD F. STORK, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

466

---

**COUNSEL**

Michael D. Stump and Loren E. McMaster for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Jeffrey L. Gunther, Deputy Attorney General, for Defendants and Respondents.

---

**OPINION**

**FRIEDMAN, J.**—Plaintiff, a member of the Public Employees Retirement System, brought this declaratory relief action against the state to challenge the constitutionality of a 1972 statute which altered his retirement benefits. The trial court granted the state's motion for summary judgment and plaintiff appeals.

██ No judgment as such was signed or entered. The last action of the trial court on file is an order granting the state's motion for summary judgment. After the order was filed, plaintiff filed a purported appeal from the judgment. The order is not even a declaration of rights favoring the defendant and adverse to the plaintiff, but could be interpreted as an exercise of the court's discretionary power to withhold declaratory relief. Nevertheless, we are reluctant to destroy the parties' assumption that they have presented an effective appeal. The facts are uncontested and the issue is one of law. Where, from the record, the reviewing court is able to ascertain that the trial court intended a declaration of rights

adverse to the plaintiff, the absence of an express declaration is error but not a ground for reversal. (*Anderson* v. *Stansbury,* 38 Cal.2d 707, 717 [242 P.2d 305]; *California Chiropractic Assn.* v. *Board of Administration,* 40 Cal.App.3d 701, 704 [115 Cal.Rptr. 286].) Here, the parties' summary judgment papers debated the constitutional question, and the court filed a notice of intended decision expressing the judge's view that the statute was constitutional. Thus, we interpret the order granting the state's motion for summary judgment as a final judgment declaring the validity of the 1972 modification of retirement benefits.

■ A change of retirement law which diminishes earned pension rights of public employees violates constitutional prohibitions against impairment of the obligations of contracts; the prohibition does not immunize employees against all changes; modifications may be made in the earned pension rights of active employees if they are reasonable and related to the theory of a sound pension system and if changes detrimental to the individual are offset by comparable new advantages. (*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 449 [326 P.2d 484]; *City of Downey* v. *Board of Administration* (1975) 47 Cal.App.3d 621, 632 [121 Cal.Rptr. 295].) The employee is entitled to no more and no less than preservation of the "reasonable expectations" generated by the pension system. (*Lyon* v. *Flournoy* (1969) 271 Cal.App.2d 774, 782, 787 [76 Cal.Rptr. 869].)

Plaintiff was born in February 1919. He became a member of what is now the Public Employees' Retirement System in December 1948, six months after he commenced work for the state Department of Fish and Game. During the following years he worked continuously for the department. During those years the retirement law provided a service retirement formula for employees in the ordinary, nonhazardous state positions. These were called *state miscellaneous members.* The law also contained a number of separate retirement formulae for employees in the somewhat more hazardous "public safety" occupations, establishing separate categories for prison, patrol, warden, narcotics enforcement and law enforcement members. As a fish and game warden, plaintiff bore the classification of *warden member.*

In 1961, plaintiff availed himself of a statutory option by which he rejected combined coverage under the state system and the Social Security Act and elected to accept the service retirement formula established for *state miscellaneous members.* The latter formula is described in Government Code section 21251.13.

In 1972 legislation was adopted abolishing the special retirement formulae for most public safety employees and gathering them into a single category of *state safety member.* (See Gov. Code, § 20014.) The new legislation became operative on April 1, 1973. Applied to plaintiff, this legislation abolished his status as a *warden member* and classified him as a *state safety member.* (Gov. Code, § 20017.9.) The service retirement formula applicable to state safety members is set out in Government Code section 21252.6. Shaped by the variant factors of length of service and age at retirement, the latter provides a different scale of retirement allowances than that accorded state miscellaneous members under section 21251.13.

On the assumption of a monthly salary of $1,420.94 immediately preceding plaintiff's retirement, the following table depicts the monthly service retirement allowance (and its actuarial equivalent) available to him as a state safety member (under Gov. Code, § 21252.6) as compared with that available to him as a state miscellaneous member (under Gov. Code, § 21251.13):

| | *MISCELLANEOUS* | | *SAFETY* | |
|---|---|---|---|---|
| *Age at Retirement* | *Monthly Allowance* | *Actuarial Equivalent* | *Monthly Allowance* | *Actuarial Equivalent* |
| 54 | $ 440.82 | $ 74,562.94 | $614.89 | $104,005.42 |
| 55 | 490.89 | 81,211.86 | 695.32 | 115,032.35 |
| 56 | 546.42 | 88,357.75 | 723.74 | 117,030.93 |
| 57 | 607.75 | 95,983.78 | 752.16 | 118,790.89 |
| 58 | 676.77 | 104,313.94 | 780.58 | 120,314.70 |
| 59 | 753.18 | 113,202.95 | 809.00 | 121,592.70 |
| 60 | 837.41 | 122,625.30 | 837.41 | 122,625.30 |
| 61 | 923.86 | 131,688.85 | 865.83 | 123,417.14 |
| 62 | 1015.87 | 140,810.76 | 894.25 | 123,952.89 |
| 63 | 1115.51 | 150,198.96 | 922.67 | 124,233.82 |
| 64 | 1149.87 | 150,227.07 | 951.09 | 124,257.06 |
| 65 | 1184.23 | 149,924.70 | 979.51 | 124,006.95 |

The parties do not quarrel over the public objectives of the 1972 statutory changes and their relationship to the retirement system's soundness. It is helpful briefly to describe these general objectives. The 1972 legislation had been preceded by studies by the Board of

Administration of the Public Employees Retirement System, the state legislative analyst and the Assembly Committee on Retirement Systems. In summary, these studies recommended merger of separate retirement classes of public safety employees into a single class of state safety members; declared that early retirement of safety employees should be encouraged by means of relatively high retirement allowances in the early years of retirement eligibility; stated that early retirement inducement would lower the average age of safety employees' in active service, thus contributing to a generally high level of physical ability necessary for the effective performance of public safety tasks; observed that, although some safety members viewed early retirement as a reward, the real objective of early retirement is the benefit to fellow employees and the public. These studies infer that the reduction of safety members' benefit scales after age 60 would induce retirement before the ravages of time impair their general level of physical ability.

The above comparison table illustrates how the 1972 Legislature sought to achieve these objectives. At retirement ages below 60, the benefit scale for safety members is markedly higher than the scale for miscellaneous members. At age 60 the benefits are at parity. After that age the balance shifts in favor of the miscellaneous member. Between the retirement ages of 61 and 65 the law accords miscellaneous members a higher scale of allowances than safety members.

The shift of advantage from one category to the other is accentuated by comparing the allowances (based upon plaintiff's assumed salary at retirement) payable for retirement at ages 55 and 65. Upon retirement at 55, the safety member receives a monthly allowance $204.43 higher than the miscellaneous member; the actuarial value of the former allowance is $32,820.49 higher than the latter. At age 65 the advantage has shifted to the miscellaneous member. At 65 the safety member receives a monthly allowance $204.72 less than the miscellaneous member; the actuarial value of the former's allowance is $25,917.75 less than the miscellaneous member's.

■ Plaintiff's claim of contract impairment stems from his enforced reclassification as a safety member and his deprivation of the benefit scale fixed for miscellaneous members. At this writing he has reached his 57th birthday. In his summary judgment declaration he alleges that in 1961 he exercised his option to become a state miscellaneous member because he intended to work until age 65; that classification provided the

highest available retirement payment at that age; his enforced reclassification to the safety member category will provide him at age 65 a monthly service retirement allowance $204.72 less than that available to him as a miscellaneous member.

The state contends that the advantage given safety members by the higher scales for early retirement fully offsets the disadvantage of the lesser scale for retirement between 61 and 65. The state points out that plaintiff's reclassification became effective on April 1, 1973, before his 55th birthday; thus, that the law provided him full opportunity to accept the higher allowances provided for safety members who wish early retirement; that plaintiff's election to defer retirement and accept a lesser scale of benefit increases after age 60 is voluntary and not forced upon him by the state.

"[A]n advantage relied on as offsetting must relate generally to the benefit that has been diminished." (*Frank* v. *Board of Administration* (1976) 56 Cal.App.3d 236, 244 [128 Cal.Rptr. 378].) Several California Supreme Court decisions imply a necessity for inquiry into the alteration's practical impact upon the life situation of the individual employee before the court. (*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 449 [326 P.2d 484]; *Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 132 [287 P.2d 765].) Other decisions explain that the employee's subjective desires are not a factor in the constitutional balancing of advantage and disadvantage. (*Amundsen* v. *Public Employees' Retirement System* (1973) 30 Cal.App.3d 856, 859 [106 Cal.Rptr. 759]; see also, *City of Downey* v. *Board of Administration, supra,* 47 Cal.App.3d at p. 633.)

In part, plaintiff's claim of deprivation is premised upon injury to his subjective, uncommunicated desire to defer his retirement until age 65. Nevertheless, he has established a number of externalized, objective facts concerning his life situation, which permit a court to measure his actual injury. In 1961, at age 42, he elected to accept the retirement formula of a state miscellaneous member; in 1969, at age 50, he accepted a transfer from Los Angeles to Sacramento and bought a new home in the latter community; his house payments were based upon his expectation of receiving the salary for active service until age 65; he is trained as a fish and game warden; the private job market has little or no need for his skills.

The record of objective commitments might have been amplified by more detailed evidence concerning plaintiff's family circumstances,

including the number and age of his dependents and by an expense budget depicting his current and expected expenses and commitments. Nevertheless, plaintiff has described the existence of actual commitments and circumstances which impel him toward late retirement. The state does not dispute Stork's description of his personal situation. Of particular note is the lack of occupational skills which might permit him to supplement his retirement allowance. He has supplied enough objective information concerning his life situation to demonstrate: (a) that the scale of higher retirement allowances for state safety members under age 60 supplies him with no practical benefit, and (b) that the scale of lesser retirement allowances for state safety members retiring between 61 and 65 imposes tangible injury upon him.

The state's tender of a higher scale for early retirement of safety members supplies an illusory counterbalance. There are those employees who possess or can develop independent sources of income, who view retirement payments as a subsidy (not a livelihood) and whose life situation permits early retirement. To such employees, the higher scale of allowances available to state safety members for retirement at ages 55 to 59 may represent an advantage.

Others are burdened with economic needs outstripping early retirement allowances. Relying upon relatively high preretirement salaries, they seek and plan on late retirement. Their theoretical choice between early and late retirement is so fettered by economic necessity as to be no choice at all. In their life situation an early retirement which cuts income 40 or 50 percent below preretirement earnings represents outright deprivation of livelihood.

Plaintiff, who describes only his own needs, typifies those whose situation impels late retirement. If plaintiff, now at age 57, needs a minimum monthly income of $1,200 or $1,400 to support himself and his family, both the $752.16 retirement allowance for a safety member and the $607.75 for a miscellaneous member fall far short of sufficiency. Neither represents a practicable alternative to staying on the job.

From 1961 to 1972 plaintiff possessed the status and retirement expectations of a state miscellaneous member. The service retirement formula for the state miscellaneous category provides an allowance which increases exponentially in relationship to final salary. (Gov. Code, § 21251.13 (former § 21251.1, repealed 1972).) The state safety formula

excludes the exponential factor, providing instead a flat fraction of final salary for each year of service. (Gov. Code, § 21252.6.) The 1972 law moved plaintiff from the former category to the latter, depriving him of the exponential increases in the benefit scale and subjecting him to an increasingly inferior scale of allowances for retirement at ages 61 to 65, until, upon retirement at 65, the inferiority amounts to $204.72 each month.

The brief of plaintiff's counsel aptly describes the illusory quality of the advantage offered by the superior scale of early retirement allowances: "In order for [plaintiff] to avail himself of this 'benefit' he must relinquish 10 years of his highest paid state employment. He must give up his employment at a time when the most widely accepted forecast of economic conditions is a trend of continued inflation which will steadily erode the standard of living of persons on fixed incomes. He must be content to live out the remaining years of his life on an income which is dramatically less than that to which he has become accustomed or attempt to supplement his income by seeking employment during the remaining productive years of his life in a job market for which he has no skills and very little chance of finding financially or psychologically rewarding employment. ¶ . . . [Plaintiff] is given Hobson's choice of retirement at 55 with a totally inadequate income to maintain his standard of living, or to remain employed until age 65 and accept the annual penalty imposed for remaining on the job past age 60."

During the years preceding the 1972 amendments, the Public Employees Retirement Law generated an expectation that plaintiff could defer retirement to age 65 with assurance that the scale of allowances provided for state miscellaneous members. In order to achieve valid public objectives, the 1972 amendments deprived plaintiff of that expectation, offering a substitute advantage which is illusory and which fails to offset the loss. As applied to plaintiff, the 1972 reclassification offends the constitutional prohibition against contract impairment.

■ A law may be unconstitutional in its application to a particular case, yet valid in its general application, especially where, as here, it is apparent that the Legislature would want the act to prevail where it constitutionally may. (*Diamond Glue Co.* v. *U. S. Glue Co.* (1903) 187 U.S. 611, 617 [47 L.Ed. 328, 333, 23 S.Ct. 206]; *Paul* v. *Allied Dairymen, Inc.* (1962) 209 Cal.App.2d 112, 124 [25 Cal.Rptr. 595]; 16 Am.Jur.2d, Constitutional Law, § 194, pp. 427-428; cf. *Leaming* v. *Municipal Court*

(1974) 12 Cal.3d 813, 816-817, 819-820 [117 Cal.Rptr. 657, 528 P.2d 745].) Notwithstanding the 1972 amendments, plaintiff is entitled to the scale of service retirement allowances prescribed for state miscellaneous members.

The judgment is reversed. The cause is remanded to the trial court, which is directed to enter a declaratory judgment consistent with the views expressed in this opinion.

Puglia, P. J., and Paras, J., concurred.