**CITY OF AURORA, Colorado, A Municipal Corporation, Plaintiff-Appellant,**

**v.**

**George B. ACKMAN, et al., Defendants-Appellees.**

**No. 85CA0495.**

Colorado Court of Appeals, Div. I.

Feb. 26, 1987.

As Modified on Denial of Rehearing March 26, 1987.

Certiorari Denied (City) June 8, 1987.

Patrick E. Kowaleski, Charles H. Richardson, Aurora, for plaintiff-appellant.

Gene A. Ciancio, P.C., Gene A. Ciancio, Thornton, Dickson & Dickson, Charles B. Dickson, Greeley, for defendants-appellees Calvin L. Adams, James Breeden, Donald B. Buchanan, Samuel Dilley, Kenneth M. Fix, Eli H. Gehman, Norman Graves, Robert Green, Michael L. Knight, Raymond Lynch, Warren L. Lumpkin, Peter McGarrahan, Arnold Mitchell, and Robert Sivacoe.

No appearance for remaining defendants-appellees.

CRISWELL, Judge.

Plaintiff, City of Aurora (City), appeals the declaratory decree of the district court which determined that certain state statutes and ordinances of the City, relating to its firemen's eligibility for retirement, could not validly be applied to those firemen who were initially hired by the City prior to January 1, 1976. We affirm.

The City is a home rule municipality organized pursuant to the provisions of Colo. Const. art. XX. Prior to January 1, 1976, its firemen's retirement program was governed by the statutory provisions applicable to all municipalities with a population of 100,000 or less, having a regularly organized volunteer or paid fire department. *See* § 31-30-401, et seq., C.R.S. (1986 Repl. Vol. 12B) (Part 4). These statutory provisions required that a fireman be allowed to retire upon reaching fifty years of age, provided he had served a period of *20 years* or more in active service. His monthly pension was to be equal to fifty percent of the amount of his monthly salary as of the date of his retirement. His pension payment would not increase as the salary for active members of the fire department holding the rank the retired member held on the date of retirement increased, unless the municipality expressly agreed to such a "rank escalator" benefit. Section 31-30-408, C.R.S. (1986 Repl. Vol. 12B).

At the time of the events giving rise to the present controversy, a wholly separate statute governed the municipal firemen's retirement in municipalities having a population in excess of 100,000. Section 31–30–501, et seq., C.R.S. (1986 Repl. Vol. 12B) (Part 5). This statutory scheme required that municipal firemen be allowed to retire upon serving *25 years* and attaining 50 years of age. It also required, however, that the monthly pension payment of one-half the amount of the retiree's salary at the time of his retirement be increased as the salary of active firemen serving in the rank which he held at the time of his retirement was increased. Section 31–30–511, C.R.S. (1986 Repl. Vol. 12B).

Nothing within the provisions of either Part 4 or Part 5 specified the manner in which a municipality was to convert from the retirement plan governed by Part 4 to the retirement program governed by Part 5 when, by reason of an increase in its population, the city ceased being governed by the former statute and commenced being regulated by the latter. Hence, neither statute expressly addressed the question whether, when a city's population reached more than 100,000, Part 5 was intended to apply to all of that city's firemen (thereby increasing, by five years, the length of service which a city might require for firemen hired before its population reached 100,000) or only to those firemen hired by the city after the provisions of Part 5 became applicable.

In the early 1970's, the City became aware that its population was increasing at such a rate that it would soon exceed the 100,000 level. In litigation involving a related, but entirely independent, issue, the district court concluded that the City had achieved this population level on January 1, 1976, and the parties to this action have accepted that date as the appropriate one to be applied to the issues here presented. Thus, all agree that the provisions of Part 5 became applicable to the City, generally, as of that date.

Prior to that date, and in contemplation that the provisions of Part 5 would soon become applicable to it, the City, its fire-men's pension board (established pursuant to Part 4), and the firemen, themselves, discussed the ways in which the then existing retirement program should be changed. Ultimately, it was proposed that the City give its consent to a rank escalator benefit (as authorized under Part 4); that the length of active service requirement be extended from 20 to 25 years; that both these new provisions be made applicable to all active firemen, except those who would be eligible to retire (*i.e.*, those who had at least 20 years' active service and had reached age 50) on or before January 7, 1974; and that the amount of each active fireman's individual contribution to the pension fund be increased.

A vote among all active firemen was taken upon these proposals with the result that the overwhelming majority of them agreed to their immediate implementation. No contention is made that this vote established an alternative pension benefit program under either § 31–30–417 or § 31–30–522, C.R.S. (1986 Repl. Vol. 12B) (which statutes did not become effective until 1977). Further, all parties agree that this vote did not, and legally could not, bind any individual fireman.

Nevertheless, on December 15, 1973, the City's legislative body adopted an ordinance consenting to a rank escalator benefit, pursuant to Part 4. On February 16, 1974, one portion of the City's firemen's pension ordinance, which had previously required 20 years' service, was amended to require 25 years' service.

In 1983 the City commenced this declaratory judgment action, naming all of its active firemen who had been hired by it prior to January 1, 1976, as defendants, and sought a decree that all defendants were required to serve 25 years in order to qualify for a pension.

One hundred two of the defendants either confessed the allegations of the City's complaint or asserted that all of the City's firemen were required to be treated on the same basis, without distinction.

Fourteen of the defendants responded as a group, alleging, *inter alia*, that Part 5, itself, did not require the imposition of the

25–year service requirement and that, if it did, such requirement could not properly be applied to them.

After a bench trial, the district court found that the increased service requirement of 25 years constituted, from the firemen's perspective, an adverse change to the pension plan; that the rank escalator benefit did not represent a "corresponding contemporaneous increase," or a "substantial increase," in the plan's benefits; and that, consequently, the City could not impose a 25–year service requirement upon its firemen until January 1, 1976, when the provisions of Part 5 became effective, and then such a requirement could be made effective only for firemen hired on or after that date.

We agree with the result reached by the trial court.

## I.

The subject of pensions for municipal firemen is one which is of both state-wide and municipal concern. Therefore, any local legislation adopted by the City under Colo.Const. art. XX may only supplement, and may not conflict with, state statutes. *Huff v. Mayor & City Council of Colorado Springs,* 182 Colo. 108, 512 P.2d 632 (1973); *Peterson v. Fire & Police Pension Ass'n,* 725 P.2d 81 (Colo.App.1986) (cert. granted, September 29, 1986). Thus, since the City in 1974 was subject to the provisions of Part 4, which required it to allow firemen to retire after 20 years' service, the ordinance adopted by it in that year, extending such service requirement to 25 years, being inconsistent with Part 4, could not validly be applied to any City fireman at that time.

Moreover, if the General Assembly did not intend the provisions of Part 5 to be applied to any fireman hired by a city before that city's population reached 100,000, when Part 5 became generally applicable to it, any attempt by the City to increase the length of service requirement beyond that mandated by Part 4 for such a fireman would also be inconsistent with Part 5.

In our view, there are several reasons why this construction of Part 5 is the favored one.

Part 5 was originally adopted in 1913, Colo.Sess.Laws 1913, at 438, et seq., when there was only one city, Denver, to which its provisions applied. That was also at a time when public pensions were thought of as the largesse of the sovereign and there had, as yet, been no recognition of the contractual nature of such benefits. *See Board of Trustees v. People ex rel. Behrman,* 119 Colo. 301, 203 P.2d 490 (1949). It seems obvious, therefore, that, there then being no reason to consider the question of the applicability of Part 5 to employees of other cities, no legislative consideration was given to that question.

Yet, any ambiguities appearing in statutes regulating pension and retirement funds must be construed favorably toward the employee. *Taylor v. Public Employees' Retirement Ass'n,* 189 Colo. 486, 542 P.2d 383 (1975); *Endsley v. Public Employees' Retirement Ass'n,* 33 Colo.App. 416, 520 P.2d 1063 (1974).

Likewise, a construction of a statute which renders that statute constitutionally valid is to be accepted over one which would require it to be declared invalid. *Duprey v. Anderson,* 184 Colo. 70, 518 P.2d 807 (1974). Any construction of Part 5 which would make its provisions applicable to firemen in the status of the defendants in this case would raise grave questions as to Part 5's validity. *See Police Pension & Relief Board v. Bills,* 148 Colo. 383, 366 P.2d 581 (1961).

Finally, while the provisions of Part 5 do not specifically address the issue presented here, it must be recognized that that statute has, itself, been superseded by an entirely new statute upon the subject of firemen's pensions. *See* § 31–30–1001, et seq., C.R.S. (1986 Repl. Vol. 12B). That statute specifically provides that, except for those firemen who voluntarily elect to be covered by the new statute, its provisions for retirement pensions, as distinguished from disability or death benefits, are to be applied only to those who were hired after its effective date. Section 31–30–1003(3)(b),

C.R.S. (1986 Repl. Vol. 12B). This statutory provision, while not directly relevant to the issue here, does constitute, in our view, a general recognition by the General Assembly that it would be improper to attempt to apply the provisions of a new pension program to employees who have been employed in anticipation of the receipt of benefits under another program.

We conclude, then, that the provisions of Part 5 were not intended to be applied to firemen whose initial service with the City commenced at a time when the provisions of Part 4 governed their receipt of a pension. The City's 1974 ordinance, therefore, to the extent that it purports to extend its provisions to firemen in defendants' status, conflicts with the provisions of Part 5 and cannot be applied to them.

## II.

The City argues, however, that it could properly increase the length of service requirement for defendants under its pension plan, since it also adopted a rank escalator benefit, which offsets the disadvantage of this increased requirement. Under the circumstances portrayed by this record, we disagree.

For many years, a public employee pension program was considered not to give rise to any contractual, or other vested, right in the beneficiary. *Board of Trustees v. People ex rel. Behrman, supra.* It is now well settled, however, that such a pension program constitutes a part of the public employee's compensation due under the contract of employment, particularly where, as here, the pension program is funded, at least in part, by contributions from the employee. Consequently, a substantial adverse change cannot be made in the "vested" pension rights of an employee who has already met the eligibility requirements of such a program. *Police Pension & Relief Board v. McPhail,* 139 Colo. 330, 338 P.2d 694 (1959).

Likewise, even though an employee's pension rights may not yet have become vested, because he has not yet met the length of service or other eligibility requirements under the plan, once a prospective pension benefit is included in an employee's employment contract, as one of his employment conditions, and he performs service for the public employer under that contract, he is normally entitled to receive benefits pursuant to the terms of that pension program, subject only to his meeting the program's stated eligibility requirements. This contract between the public entity and the employee generally prohibits a change in the existing program which would have a substantially adverse effect upon the employee's anticipated pension benefits. *Police Pension & Relief Board v. Bills, supra. But cf. Peterson v. Fire and Police Pension Ass'n, supra* (provision making death benefits payable directly to survivors does not vest rights in survivors until death of employee).

It has been recognized, however, that, at least in the instance of an employee whose rights have not yet become wholly vested, some changes in an existing pension program may be made. In describing the nature of the changes which might properly be made in these instances, the supreme court in *Police Pension & Relief Board v. Bills, supra,* stated:

"We now hold that . . . prior even to their eligibility to retire, there was a limited vesting in these plaintiffs of their pension rights to the end that although prior to their eligibility to retire the pension plan could be changed, it could not be abolished nor could there be a substantial change of an adverse nature, without a corresponding change of a beneficial nature. An employee's pension rights prior to his eligibility to retire may be modified for the purpose of keeping the pension system flexible to permit adjustments in accord with changing conditions if at the same time the basic integrity of the plan is still maintained. Hence, prior to eligibility for retirement, changes may properly be made in a pension plan if these changes strengthen or better it, or if they are actuarially necessary."

Nothing within the opinions of the supreme court in either *McPhail* or *Bills,*

*supra,* however, suggests that a municipality may make *any* changes which conflict with state statutes upon the subject. On the contrary, the supreme court's later decision in *Huff, supra,* mandates the conclusion that the changes contemplated by its *Bills* opinion consist only of those which a municipality would otherwise be authorized to make by state statutes or under the authority of Colo.Const. art. XX. Hence, since we have concluded that the City had no authority to make the increased length of service requirement applicable to firemen hired by it prior to January 1, 1976, the question whether the rank escalator benefit is an offsetting change under *Bills* becomes irrelevant.

However, the result we reach here would be the same even if we are incorrect in our interpretation of Part 5.

The City acknowledges that the changes adopted by it in 1973 and 1974 were not actuarially required and no "changing conditions" mandated their adoption. Thus, its sole justification for increasing the length of service requirement is the claim that the rank escalator benefit constitutes a corresponding beneficial change under *Bills.*

In deciding *Bills,* the supreme court relied upon several decisions from California, *e.g., Allen v. City of Long Beach,* 45 Cal.2d 128, 287 P.2d 765 (1955); *Abbott v. City of Los Angeles,* 50 Cal.2d 438, 326 P.2d 484 (1958), where a kindred rule relating to public pension changes had been adopted previously. While there have been no subsequent Colorado decisions which further explain the nature of the "corresponding change of a beneficial nature" which would "strengthen or better" the pension plan, so as to offset the effect of an adverse change, later California decisions have established conditions which must be met by a beneficial change in order for it to validate a corollary adverse change.

In California, the offsetting benefit must relate, at least generally, to the benefit which has been diminished. In addition, the disadvantage or benefit of the changes is not to be measured by the individual desires of the employees affected by the changes. Rather, the test is the practical impact which the changes will have upon the life situations of those employees. *See Stork v. State,* 62 Cal.App.3d 465, 133 Cal. Rptr. 207 (1976); *Frank v. Board of Administration,* 56 Cal.App.3d 236, 128 Cal. Rptr. 378 (1976); *City of Downey v. Board of Administration,* 47 Cal.App.3d 621, 121 Cal.Rptr. 295 (1975).

■ Because of the supreme court's previous reference to the California rule in the *Bills* case, and because we have reached the independent judgment that this later California jurisprudence is a logical and reasonable exemplification of the conclusion reached in *Bills,* we adopt the rationale applied in these later California cases for application here.

■ We acknowledge, of course, that a rank escalator benefit is one which is of importance to prospective retirees. Indeed, this type of benefit was the one involved in both the *McPhail* and *Bills* cases. However, whether the advantage of such a benefit offsets the disadvantage of being required to serve five years longer before becoming eligible to receive *any* retirement benefit based upon length of service is a question which, in our view, cannot be answered as a matter of law. It depends, rather, upon the actual practical impact which the combined changes would have upon the life situations of the employees affected. *See Stork v. State, supra.*

■ In the trial here, evidence was introduced which, if credited, established that, because of the great difference between the level of wages paid by the City and the level paid by private industry for like services, the rank escalator benefit could never guarantee a recoupment to an individual for the lost wages he might suffer by being required to serve as a public fireman for an additional 5 years. In addition, the testimony reflected that the increased rate of contributions required from the firemen was adopted so as to finance, at least in part, the increased payments which would result from the City's consent to the rank escalator benefit.

Based upon this evidence, the trial court found, as a fact, that the rank escalator benefit did not constitute a comparable offsetting increase in benefits so as to justify a more stringent length of service requirement. Since that factual finding is supported by the record, it is binding on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

### III.

Finally, the City requests, should this court conclude that the increased length of service requirement cannot be applied to defendants, that we also rule that they are similarly not entitled to the rank escalator benefit. We can find no point in the record of the proceedings before the trial court where the City raised this issue or made a similar request. Indeed, in that court, the City's only prayer was that all firemen should be treated the same, without distinction based upon date of hire. Hence, we decline to address it on this appeal.

The judgment of the district court is affirmed.

PIERCE and TURSI, JJ., concur.