Thomas J. McINERNEY,
Plaintiff–Appellant,

v.

PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION, Defendant–Appellee.

No. 97CA0280.

Colorado Court of Appeals,
Div. V.

Oct. 1, 1998.

Rehearing Denied Nov. 5, 1998.

Certiorari Denied May 17, 1999.

---

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

Law Offices of Sander N. Karp, Sander N. Karp, Julie C. Berquist, Denver, for Plaintiff–Appellant.

Senn Lewis Visciano & Strahle, P.C., Frank W. Visciano, Brian J. Reichel, Luis A. Toro, Denver, for Defendant–Appellee.

Opinion by Judge BRIGGS.

Plaintiff, Thomas J. McInerney, appeals from the trial court's dismissal of his claims against defendant, Public Employees' Retirement Association (PERA). He contends that his right to procedural due process was violated as a result of statutory changes in the PERA benefit plan that were enacted without his knowledge. We affirm.

Plaintiff is a full-time, tenured professor at Metropolitan State College of Denver (Metro), who began working and contributing to PERA in 1982. In 1994, while he was on sabbatical, the General Assembly amended the PERA benefit scheme. Plaintiff was not notified of the pending legislation, and the changes took effect without his knowledge.

Plaintiff filed suit against the Trustees of the State Colleges in Colorado and later added PERA as a defendant. His basic allegation was that he had been denied due process of law because he had not been provided notice of the 1994 amendments to the statutory scheme and an opportunity to elect benefits under the old plan.

PERA filed a motion to dismiss, which the trial court granted. The case remains pending against the other defendant.

On appeal from the dismissal of his claims against PERA, plaintiff asserts that, had he known of the legislation before the changes took effect, he could have taken steps to protect his eligibility under the old plan for benefits, which are reduced under the new plan. He argues that his right to procedural due process was violated because the statutory amendments did not include a provision for giving fair notice to PERA members before the changes took effect, and PERA failed to give him notice.

## I.

As an initial matter, we reject PERA's contention that we lack jurisdiction over this appeal. Unlike PERA, we do not read the trial court's C.R.C.P 54(b) certification as limited to claims dismissed based on sovereign immunity. To the contrary, having dismissed *all* claims against PERA, the trial court expressly found there was no just reason for delay and entered final judgment against plaintiff and in favor of PERA. We therefore conclude that we have jurisdiction to decide this appeal.

## II.

Plaintiff's constitutional challenge must be considered in the context of the PERA statutory scheme. This includes the changes the General Assembly implemented in the PERA benefit plan in 1992 and in 1994.

PERA is the instrumentality of the state of Colorado responsible for administering retirement and disability benefits for eligible state employees. *See* §§24–51–201 and 24–51–202, C.R.S.1998. Eligible state employees and employers make periodic contributions to PERA as a term and condition of employment. *See* §24–51–301, C.R.S.1998.

Employees become eligible to begin receiving retirement benefits upon meeting age and service credit requirements. *See* §24–51–602, C.R.S.1998. With certain exceptions, an employee earns one service credit for each year of public employment. *See* §24–51–501, C.R.S.1998. Employees may "purchase" additional service credits under specified conditions. *See* §§24–51–502 to 24–52–509, C.R.S. 1998.

Until the statutory changes in 1994, faculty and administrators in state colleges and universities were required to be members of PERA. *See* Colo. Sess. Laws 1987, ch. 194, §24–51–301, at 1052. A retiring member's benefits would be reduced if the member continued to work full time in the same position, or in another position "subject to PERA membership." *See* Colo. Sess. Laws 1987, ch. 194, §§24–51–1101 and 24–51–1102, at 1073.

In an effort to attract more qualified professors and administrators to the state colleges and universities, the General Assembly in 1992 passed S.B. 127, which added a new provision to the law. The new statutory scheme allows each state college and university to establish an optional retirement plan (ORP) for its faculty and administrators. *See* Colo. Sess. Laws 1992, ch. 104 at 571 (now codified as §24–54.5–101 et seq., C.R.S. 1998). If a state college or university establishes an ORP, its eligible employees have to make an irrevocable election between participating in the ORP or in PERA. *See* §§24–54.5–105 and 24–54.5–106, C.R.S.1998. With exceptions not pertinent here, employees who elected to join the ORP are no longer eligible for membership in PERA. *See* §24–51–310(1)(k), C.R.S.1998.

When the ORP statutory amendments were enacted in 1992, an unintended "loophole" was created. The existing requirement in §§24–51–1101 and 24–51–1102 that benefits be reduced for PERA members who retired but took full-time employment in another position did not apply to those who retired and took positions *not* "subject to PERA benefits." As a result of the 1992 amendments, faculty and administrators who were eligible for PERA retirement benefits could "retire" by opting to terminate membership in PERA, yet continue their employment under the new ORP. Because they were no longer "subject to membership" in PERA, they could receive full PERA retirement benefits even though they were continuing in the same full-time employment at the same salary.

In 1994, the General Assembly closed this "loophole" by passing S.B. 50, which took effect June 3, 1994. *See* Sess. Laws 1994, ch. 339, §§24–51–1101(1) and 24–51–1102, at 2579; *see also* Hearings on S.B. 50 before the House State Affairs Committee, 59th General Assembly, Second Session (February 3, 1994)(discussing the inequities of allowing an employee to receive full retirement benefits from the same employer for whom the employee continues to work full time). Under the new law, again subject to exceptions not pertinent here, benefits for a PERA member who retires *after* June 3, 1994, may be reduced if the member continues to work full time, regardless whether the employee

remains in a position "subject to PERA membership." *See* §§24–51–1101(1) and 24–51–1102, C.R.S.1998.

The arguable result is that faculty and administrators who were eligible for PERA retirement benefits and "retired" *before* S.B. 50 took effect, by opting to terminate their PERA membership and continue in their same employment under an ORP, remain eligible to receive full PERA benefits, even after the bill took effect. In contrast, those PERA members who, like plaintiff, had not opted out of PERA before the amendments, are subject to a reduction in PERA retirement benefits if they continue under an ORP in the same full-time employment at the same salary.

### III.

In response to the earlier 1992 amendments to the PERA benefit scheme, the board of trustees at Metro in February 1994 adopted an amendment to its Handbook for Professional Personnel and established an ORP. With the change, employees of Metro eligible for retirement could now opt out of PERA and receive full PERA retirement benefits, while continuing in full-time employment at full salary as a member of the new ORP. As just described, the General Assembly responded in turn by passing S.B. 50, with the effective date of June 3, 1994.

Plaintiff was on sabbatical from January to July of 1994. According to the amended complaint, he did not receive notice of the change in the Metro handbook. Nor did he receive notice of S.B. 50 when it was pending or when it became effective.

After returning from sabbatical and learning of the changes in the handbook and the enactment of S.B. 50, plaintiff wrote a letter to PERA expressing his desire to purchase enough service credits to make him eligible to retire. He requested that the purchase and his retirement from PERA be made retroactive to June 3, 1994, so that he could take advantage of the statutory loophole.

PERA agreed that plaintiff could purchase service credits and retire from PERA. However, because the actual date of his retirement would be after the effective date of the new legislation, PERA asserted that it would have no choice but to reduce his benefits if he continued to work full-time at the same salary.

As earlier noted, in his amended complaint, plaintiff asserted that he was denied due process of law because he was not provided adequate notice of the 1994 amendments to the statutory scheme. He claimed that the thirty-day window between the date the General Assembly passed S.B. 50 and the date it took effect was insufficient to allow members affected by the legislation to assess and exercise their rights.

Plaintiff requested a declaration that the 1994 amendments were unconstitutional and an award of damages under 42 U.S.C. §1983 (1994). He also requested a mandatory injunction requiring that PERA sell him the necessary years of service credit and qualify him for full PERA retirement benefits, while he maintained his full-time employment at Metro.

In its motion to dismiss, PERA argued that: it was immune from suit under §1983; even if not immune, it was not subject to liability because the changes in the benefit plan were not pursuant to any changes in its own "policies and customs"; plaintiff had failed to exhaust his administrative remedies; plaintiff had no vested property interest in the old benefit plan; plaintiff had no right to purchase service credit and retire retroactively; and any right to notice plaintiff might have had was owed to him by his employer, not PERA.

The trial court granted the motion, relying in large part on the reasoning advanced by PERA. This appeal followed.

We reach the same conclusion as the trial court, but for a different reason. Under our analysis, even if we assume, without deciding, that plaintiff possessed a property interest protected by due process and that he was not otherwise barred from bringing suit against PERA or obtaining the relief requested, plaintiff received all the process he was constitutionally due.

## IV.

In evaluating a motion to dismiss under C.R.C.P. 12(b)(5), all averments of material fact must be accepted as true, and the allegations of the complaint must be viewed in the light most favorable to the plaintiff. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo.1996). While motions to dismiss for failure to state a claim are viewed with disfavor, they may properly be granted where it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim. *Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972).

In Colorado, rights that accrue under a pension plan are contractual obligations protected under Colo. Const. art. II, § 11, and U.S. Const. art. 1, § 10. Retirement pay becomes a vested right when an employee has complied with the conditions imposed entitling the employee to the receipt of retirement benefits. Nevertheless, in Colorado there can be a "limited" vesting of pension rights before actual retirement or even eligibility to retire. *Police Pension & Relief Board v. Bills*, 148 Colo. 383, 366 P.2d 581 (1961); *Knuckey v. Public Employees' Retirement Ass'n*, 851 P.2d 178 (Colo.App.1992); *see also Peterson v. Fire & Police Pension Ass'n*, 759 P.2d 720 (Colo.1988).

Until benefits fully vest, a pension plan can be changed. However, with limited vesting, any adverse change must be balanced by a corresponding change of a beneficial nature, a change that is actuarially necessary, or a change that strengthens or improves the pension plan. If a plan fails to satisfy any of these three criteria, it unconstitutionally impairs existing contract rights and is thus ineffective. *Police Pension & Relief Board v. Bills, supra; Knuckey v. Public Employees' Retirement Ass'n, supra.*

Here, plaintiff has not asserted an unconstitutional impairment of existing contract rights. Instead, relying on cases such as *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), he argues only that the failure to provide him notice before the changes took effect and an opportunity to elect benefits under the old plan violated his right to procedural due process.

In the *Texaco* case, the Supreme Court addressed the constitutionality of a state mining act. Under that act, a mineral lease not used for a period of twenty years automatically lapsed and title to the minerals reverted to the current surface owner, unless the mineral owner filed a statement of claim in the local county recorder's office.

The Supreme Court first reaffirmed the power of a state to permit abandoned property interests to revert to another absent the performance of a reasonable condition that indicates a present intention to retain the interest. It concluded that a two-year grace period, as provided in the state act, provided a sufficient opportunity for owners of property interests to become familiar with the law and that the recording requirement imposed a minimal burden on contractual rights that was not beyond the scope of permissible state action.

We agree that, in the circumstances presented in the *Texaco* case, the need for notice and an opportunity to comply were valid due process concerns. However, as the Supreme Court was there careful to note, a state legislature ordinarily need do nothing more than validly enact and publish a law of general applicability. Notice and opportunity to comply was required in *Texaco* only because the statute in question required *affirmative conduct* within a specified time, and it contained a penalty for noncompliance. *See also United States v. Locke*, 471 U.S. 84, 108, 105 S.Ct. 1785, 1800, 85 L.Ed.2d 64, 84 (1985)("In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, *to the extent the legislation regulates private conduct*, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." (emphasis added)).

In contrast, when a statute does not require or prohibit specific conduct, but merely adjusts a statutory benefit level, procedural due process does not require notice and an opportunity to avoid the impact of the

new law. The legislative process provides all the process that is due. *Atkins v. Parker,* 472 U.S. 115, 129–130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81, 93 (1985)("[A] recipient is not deprived of due process when the legislature adjusts benefit levels. The legislative determination provides all the process that is due.... The participants ... had no greater right to advance notice of the legislative change ... than did any other voters."); *see also Rea v. Matteucci,* 121 F.3d 483, 485 (9th Cir.1997)("When a state alters a state-conferred property right through the legislative process, 'the legislative determination provides all the process that is due.' ").

Here, the 1994 amendments to the PERA benefit plan created no duty on the part of PERA members to take any affirmative action. The plan was simply changed.

That a window of opportunity permitted some faculty to avoid the impact of the amendments before they became effective was fortuitous and is irrelevant to this appeal. Plaintiff has made no claim that, because the window was available to those who learned of the pending legislation and acted promptly, his constitutional right to equal protection was violated.

In sum, plaintiff has not asserted an equal protection claim or a claim that the change in the PERA benefits plan unconstitutionally impaired his existing contract rights. His sole claim is that his constitutional right to procedural due process has been violated.

However, this is not a case involving government action directed toward a particular individual's liberty or property interest. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Nor is this a case involving a legislative proscription against or prescription for specific conduct, with noncompliance resulting in a detrimental impact on an acknowledged constitutional interest in liberty or property. *See Texaco, Inc. v. Short, supra.*

In the circumstances presented here, because the challenged legislation was of general applicability and merely changed statutory benefit levels, the failure to provide notice and an opportunity to avoid the change did not violate plaintiff's right to procedural due process. The legislative change having been validly enacted, plaintiff has been provided all the process he was constitutionally due.

Because of our conclusion, we need not address plaintiff's remaining contentions.

Judgment affirmed.

Judge MARQUEZ and Judge TAUBMAN concur.